# SAM HOUSTON HUFFMAN v. SCHOOL BOARD OF INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 11, HENNEPIN COUNTY.[1]

February 17, 1950.

No. 35,125.

*Best, Flanagan, Rogers, Lewis & Simonet* and *Charles S. Bellows,* for appellant.

[1]Reported in 41 N. W. (2d) 455.

*Robert E. Bowen,* for respondent.

*Edmund T. Montgomery* and *Snyder, Gale, Hoke, Richards & Janes* filed a brief as *amici curiae* in behalf of a resident and taxpayer within the territorial area of the Hill school district.

KNUTSON, JUSTICE.

This is an action to restrain the school board of Independent Consolidated School District No. 11 in Hennepin county (hereinafter referred to as defendant) from calling an election to vote upon the authorization for sale of bonds in an amount not to exceed $848,500 for use in the construction of a new secondary school. On stipulated facts, the trial court issued a temporary injunction on October 7, 1949, restraining defendant from holding the election or issuing bonds in excess of $500,000. From such order this appeal is taken.

Defendant, located west of Lake Minnetonka, was created on January 25, 1949. It constitutes the consolidation of territory formerly comprising common school districts Nos. 7, 50, 61, 62, 81, 91, 125, and 200. Shortly prior to this consolidation, district No. 200 took over the territory comprising former common school district No. 94, so that at the time of the present consolidation district No. 200 comprised two former common school districts. On January 25, 1949, common school district No. 200 had outstanding $150,000 in building bonds, which remain an obligation on the taxpayers residing within its former confines. Defendant has not assumed this indebtedness, as it might do under M. S. A. 122.26, as modified by § 122.53.

Prior to the present proceedings, defendant had not issued any bonds or incurred any liability. On September 6, 1949, its board voted to submit to election the question of issuing bonds, not exceeding $848,500, with which to build a secondary school building in the district, there being no secondary school therein. The assessed value of all taxable property within its boundaries was then approximately $1,697,500. The assessed value of all taxable property within common school district No. 200 was then $702,285. The bal-

ance of the assessed value of property within the consolidated district represents the assessed value of taxable property in other districts included within the boundaries of defendant. With some exceptions,[4] not applicable here, § 475.53, subd. 4, provides that *no school district* shall be subject to a net debt in excess of 50 percent of the last assessed value of all taxable property therein. Based on this limitation alone, defendant could issue bonds and incur a net debt not exceeding $848,500.

Plaintiff is a taxpayer living within and owning taxable real property in former common school district No. 200, which is incorporated into defendant. It is his contention that under the debt limitation of § 475.53, subd. 4, no part of the property within defendant may be subjected to a net debt exceeding 50 percent of the assessed valuation of such property for school purposes; that as a consequence the indebtedness of former common school district No. 200 in the amount of $150,000 must be taken into consideration in determining the extent to which defendant may now issue bonds and still remain within the 50 percent limitation expressed in this section of our statute; and that if the new proposed bond issue be authorized taxable property within common school district No. 200 will be subjected to a total indebtedness for school purposes of approximately 65 percent of its assessed valuation, which exceeds the statutory limit.

If this contention is correct, so that the indebtedness of former district No. 200 in the sum of $150,000 is regarded as part of the indebtedness of defendant, the consolidated district could not incur an additional indebtedness in excess of $500,000, for the reason that the proportionate amount of a $500,000 debt which would be taxable against property within former district No. 200, when added to the existing debt of that former district, would bring the net debt of taxpayers within district No. 200 for school purposes up to the statutory limit of 50 percent of the assessed value of all property within the boundaries thereof. It is apparent that if the new proposed bonds are issued taxable property within former district No.

[4]See, § 475.53, subd 5.

200 will be subjected to a total indebtedness for school purposes in excess of 50 percent of the last assessed valuation thereof.

The trial court, in a memorandum attached to its temporary injunction restraining defendant from holding a special election or taking further steps to issue bonds in an amount exceeding $500,000, stated:

"* * * The question raised by this case is whether or not this 50% limitation must be further reduced or restricted by the amount of bonds previously issued by former Common School District No. 200 (Hill). The legislature could have specifically made provision for this. It did not. The omission is a serious one. The Legislature can, and should, correct this situation at its next session. * * *

"The maximum proposed bond issue will place an especially heavy burden upon the Plaintiff and other taxpayers in the area formerly comprising School District No. 200 (Hill)."

In simple terms, the problem presented here is whether the debt limitation contained in § 475.53 applies to the debt of a school district as a legal entity or to the indebtedness that may be placed against the property within a school district, or any part thereof, for school purposes.

That a school district is a separate legal entity cannot well be denied. Bang v. Independent School Dist. 177 Minn. 454, 225 N. W. 449; Danculovic v. Zimmerman, 184 Minn. 370, 238 N. W. 695; Muehring v. School Dist. 224 Minn. 432, 28 N. W. (2d) 655. Nor can there be any doubt that the district formed by the consolidation is a legal entity separate and distinct from its component districts.

We have often said that the fundamental aim of construction of a statute is to ascertain and give effect to the intention of the legislature. In determining legislative intent, we should consider the legislative history of the act or acts involved, the subject matter as a whole, the purpose of the legislation, and the objects intended to be secured thereby. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11; State ex rel. Bergin v. Fitzsimmons, 226 Minn. 557, 33 N. W. (2d) 854.

Having in mind the plight of small school districts no longer able to furnish educational facilities demanded by present standards of living, our legislature in 1947 passed "An act to provide a survey for reorganization of school districts," and in a limited way provisions were made for reorganization largely under the then existing law. L. 1947, c. 421. At the 1949 session of our legislature, c. 421 was amended and greatly amplified. L. 1949, c. 666. This act became effective during April 1949. The objects which it sought to attain and the purposes for which the act was passed are set forth in the preamble to the act as follows:

"WHEREAS, because of population trends and educational demands it becomes necessary to give consideration to the establishment of sound educational units, and

"WHEREAS, because of universal demand for high school training, necessitating larger facilities and teaching staffs, which in many instances is beyond the financial means of many small high school districts, and

"WHEREAS, many rural school districts find new buildings necessary and attendance so low that the continuance of such districts is not feasible, and

"WHEREAS, by the process of reorganization high school districts may be shaped into sound economic units, making available to all communities a good high school education, and

"WHEREAS, we permit and encourage attendance units especially in lower grades in rural areas within reasonable distance of rural children,

"Now THEREFORE, BE IT ENACTED * * *;"

Section 475.53, which radically changed the permissible debt limit of a school district under existing law,[5] was enacted at the same legislative session as L. 1949, c. 666, so it must be presumed that the legislature had in mind the effect the debt limitation so provided would have upon consolidated or reorganized school dis-

[5]See, § 475.23, as amended by L. 1947, c. 296, § 5.

tricts to be formed under L. 1949, c. 666. This act became effective July 1, 1949.

Defendant here was formed prior to the effective date of L. 1949, c. 666, but the action of the school board providing for the holding of an election to obtain authorization to issue the bonds here involved was taken after the effective date of L. 1949, c. 682, § 3, which is now § 475.53, so it is governed by that section, and in determining legislative intent we must consider this statutory provision together with L. 1949, c. 666.

Prior to the 1949 amendment, § 122.26, so far as here pertinent, provided:

"Nothing in sections 122.18 to 122.27[6] shall be construed to transfer the liability of existing bonded indebtedness from the district or territory against which it was originally incurred.

"(1) When a district or part of a district consolidates with a district which has incurred a bonded debt for the construction of buildings and purchase of equipment, such new territory shall become liable for its proportionate share of such indebtedness upon a majority vote of the electors of such new territory voting upon the question at a special election called at the request of 25 per cent of the resident freeholders of such new territory. The result of such election shall be filed with the county auditor.

\*    \*    \*    \*    \*

"(3) The voters of a consolidated district, may, after its formation, by a majority vote take over and assume liability for the payment of the bonded debt of each district, or part of a district, entering into the consolidation except the bonded debt of any district containing in whole or in part an incorporated city or village. The clerk of the consolidated district shall, in case such bond assumption vote carries, give proper notice thereof to the auditor of each county in which any part of such consolidated district is situated."

---

[6]Sections 122.18 to 122.27 provide for the consolidation of school districts under the law as it then existed.

Section 122.27 prescribes the procedure for liquidating the indebtedness of the old districts upon consolidation.

In the 1949 amendment, §§ 122.26 and 122.27 are retained except as modified therein. With respect to the assumption of the indebtedness of the old district, the act provides (§ 122.53):

"In the event the final report of any county survey committee established and organized under the provisions of Laws 1947, Chapter 421, recommends that a reorganized or consolidated district, to be established upon a recommendation of said survey committee, should asume the liability for bonded indebtedness originally incurred by one or more of the districts which would become a part of such new reorganized or consolidated district, the voters of the reorganized or consolidated district may, after its formation by a majority vote take over and assume liability for the payment of the bonded debt of each district or part of district entering into the reorganization or consolidation and the recommendation of the county school survey committee shall be the authority for the school board of the reorganized or consolidated district to call such an election within 90 days after the establishment of the new reorganized or consolidated district."

It is therefore apparent that the indebtedness of the old district does not become the indebtedness of the new district, absent an election on the part of a majority of the electors of the new district to assume it. Can we then say that it does not become a liability of the new district for purposes of payment, but that it does become a part of its liability for the purpose of determining the limit on its bonded indebtedness under § 475.53?

It seems to us that the legislature, having in mind the purposes intended to be accomplished by the act providing for a reorganization of school districts, intended to afford the newly organized and enlarged district sufficient money-raising power to enable it to accomplish the purposes for which it was organized. To hold that the indebtedness of the old district must be considered in connection with the debt limitation imposed upon the new district by § 475.53

would in many cases defeat the very purpose of the reorganization. It is conceivable that one small district out of many included in a reorganized district would, at the time of reorganization, have an indebtedness equal to or approximating 50 percent of its assessed valuation. Under these circumstances, unless the new district assumed the indebtedness of the old by a vote of a majority of the electors of the new district, it could raise no money at all and would be effectively stymied in seeking to provide the educational facilities for which it was organized. The result might well be that a district having a large indebtedness would be left out of the reorganized district and left to shift for itself, with the further result that children living therein would be denied the opportunity of an education equal to that afforded others who happen to live in an adjoining district, which had no indebtedness at the time of the reorganization.

The single-teacher, single-room rural school is rapidly disappearing from the educational scene in Minnesota, and it seems that the very purpose of the reorganization act is to permit the formation of school districts of such size and nature as to be financially and economically able to provide equal educational opportunities to all children in the community. In order to do this, it will be necessary to erect many new or enlarged school buildings, which will require the expenditure of large sums of money. It might have been more equitable had the legislature required the assumption of the indebtedness of the old district by the new one, especially where, as here, the debt was contracted for the purpose of constructing school buildings which become the property of the new district upon reorganization; but the very fact that the legislature saw fit to make it optional with the electors of the new district to decide whether they would or would not assume such indebtedness, and expressly provided that the debt of the old district should not become the debt of the new district unless a majority vote of the electors of the new district chose to make it so, effectively negatives any intention on the part of the legislature, by inference or otherwise, that the indebtedness of the old district should be considered a

part of the indebtedness of the new district for any purpose, including that of determining the amount of indebtedness which the new district could incur under our statutory limitation.

Decisions from other jurisdictions are of little help to us in this proceeding. In State ex rel. Zylstra v. Clausen, 66 Wash. 324, 119 P. 797; Cheek v. Eye, 96 Okl. 44, 219 P. 883; Ikard v. Union Graded School Dist. 101 Okl. 80, 223 P. 141; and Mitsler v. Eye, 107 Okl. 289, 231 P. 1045 (holding that the indebtedness of the constituent districts must be taken into consideration in determining the tax limitation of a newly formed or consolidated district); and Walker v. Bennett, 125 S. C. 389, 118 S. E. 779; Welch v. Getzen, 85 S. C. 156, 67 S. E. 294; Pinion v. Walker County School Dist. 203 Ga. 99, 45 S. E. (2d) 405; and State ex rel. Consol. School Dist. v. Hackmann, 277 Mo. 56, 209 S. W. 92 (holding exactly the opposite), the limitations on the indebtedness are to be found in the constitutions of the various states involved. There is no statute, such as we have in our state, expressly providing that the indebtedness of the old district shall become the indebtedness of the new district only upon a majority vote of the new district.

In Rapp v. Bethel-Tate Consol. School Dist. 58 Ohio App. 126, 16 N. E. (2d) 224, the limitation is to be found in the Ohio statute. Ohio has a statutory provision providing that a county board of education shall make an equitable division of the funds or indebtedness of the old district. The court held in that case that the buildings and equipment of the old districts, from which the district was created, became the property of the new district and that the indebtedness of both passed to the new district. In spite of the fact that the court held that under the Ohio law the indebtedness of the old district became that of the new district, the court determined that the new district was not limited by the ten-mill limitation of the Ohio statute. The result of the decision seems to be that, even though the indebtedness of the old district must be assumed by the new district, the indebtedness of the old district is not to be considered in limiting the indebtedness of the new district to the ten-mill statutory debt limit.

The fallacy of the Oklahoma decision, as well as that of the Washington court, insofar as its application to our problem is concerned, is that they both proceed on the premise that their constitutions limit the encumbrance that may be placed upon the property of a given territory for school purposes rather than that they limit the indebtedness of the district as a legal entity. In the Cheek case, the Oklahoma court said (96 Okl. 47, 219 P. 886):

"* * * Defendants in error, however, contend that it is necessary to add the indebtedness of the old district together with the indebtedness to be created, and if the aggregate does not exceed the constitutional limitations, then it is not a violation of the Constitution.

"The fallacy of this argument as applied to the facts in the instant case permits the people's property in what was old school district No. 27 to be incumbered for school purposes with a bonded indebtedness exceeding five per centum of the taxable value of the property as shown by the last assessment."

In the Zylstra case, the Washington court said (66 Wash. 326, 119 P. 798):

"* * * It is manifest that the constitution intended to limit the amount of indebtedness any particular territory could incur for school purposes to five per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of the indebtedness."

Irrespective of the construction placed upon their constitutions by the Oklahoma and Washington courts, we need not strain the meaning of our statute by coming to a similar conclusion. If the legislature had intended to limit the encumbrance which could be placed against the property in a given geographic area for school purposes, it could easily have said so. It did not. The limitation clearly applies to the indebtedness of the school district as a legal entity and not to the encumbrance of the property within the school district for school purposes.

Nor are we dealing with a constitutional limitation on the indebtedness of a political subdivision of our state. In our case, as is pointed out above, our legislature, at the same session, enacted the debt-limitation statute, free from constitutional barriers, and the act providing for the reorganization of school districts. We must consider the two together in seeking an answer to the question raised concerning legislative intent. In doing so, we must keep in mind the objects the legislature had in mind in passing the school reorganization act, and when we do so it seems clear that the legislature intended the debt limitation to apply to the school district as an entity. This conclusion is supported not only by the language of the statutes, but likewise by the objects which are intended to be accomplished by the acts involved.

We are not unmindful of the dangers pointed out by the Washington court in the Zylstra case, where it said (66 Wash. 326, 119 P. 798):

"* * * To hold with the relators' contention would be to do away with the limitation entirely, as the legislature, by providing for successive reincorporations of the same territory, could create a new limitation whenever the existing limitation should be reached."

That may well be true where the limitation is to be found in the constitution, but where the whole matter is within the realm of legislative action, free from constitutional barriers, as in the case now before us, the legislature could change the debt limitation or eliminate it entirely as it saw fit without any resort to such indirect methods as may have prompted the language above quoted.

This seems to have been the same danger the Oklahoma court had in mind. Mitsler v. Eye, 107 Okl. 289, 231 P. 1045, *supra.* However, we do not believe that the danger of pyramiding debts by successive reorganizations is so patent that it should be used to prevent the accomplishment of the objectives we seek to attain by our reorganization act. After all, the vote of the people in the district should be the most effective check on the accumulation of excessive public debt.

We are of the opinion that the decision of the court below is wrong and should be reversed.

Reversed.

Thomas Gallagher, Justice (dissenting).

■ M. S. A. 475.53, subd. 4, limits the bonded indebtedness to which any school district may be subjected for the acquisition or betterment of schools to 50 percent of the last assessed value of the taxable property within such district. I am of the opinion that the limitation described relates to the territory within the consolidated school district, rather than to the district as a separate corporate entity. It seems clear that by the language of § 475.53, subd. 4, the legislature intended to protect property owners from excessive tax loads by limiting the indebtedness to which their property might be subject to 50 percent of the assessed value thereof.

There have been a number of decisions defining school districts as separate corporate entities. See, Bang v. Independent School Dist. 177 Minn. 454, 225 N. W. 449; Danculovic v. Zimmerman, 184 Minn. 370, 238 N. W. 695; Muehring v. School Dist. 224 Minn. 432, 28 N. W. (2d) 655. If the separate corporate structure of defendant be considered alone, it is true that the proposed bond issue in itself would not exceed 50 percent of the last assessed value of all the property within such district. However, as indicated above, I do not feel that the legislature was considering corporate entities as such in prescribing this 50 percent limitation, but was rather considering the tax load to which the property within such entities might be subjected by virtue of the total bonded indebtedness thereof, and that the property within such an entity was the factor to be considered in enforcing the limitation described.

In a number of decisions in other jurisdictions, this construction has been placed upon constitutional restrictions similar in form to the statutory provisions here involved. See, State ex rel. Zylstra v. Clausen, 66 Wash. 324, 119 P. 797; Cheek v. Eye, 96 Okl. 44, 219 P. 883; Ikard v. Union Graded School Dist. 101 Okl. 80, 223 P. 141; Mitsler v. Eye, 107 Okl. 289, 231 P. 1045.

In the Cheek case, in upholding this viewpoint the Oklahoma supreme court stated (96 Okl. 46, 219 P. 885) :

"It is next contended that the bonds were illegal for the reason that it violates section 26, art. 10, of the Constitution, in that the bonded indebtedness of the old district No. 27, when added to the present indebtedness, exceeds five per centum of the valuation of the taxable property in what is old school district No. 27. The indebtedness of district No. 27 amounts to approximately nine-tenths of one per cent. of the total valuation of such school district, and the bonds voted create an indebtedness of more than four and two-tenths per cent. That portion of consolidated school district known as No. 27 will have an indebtedness of over five per centum of the valuation of the property therein. * * *

\*  \*  \*  \*  \*

"* * * Defendants in error, however, contend that it is necessary to add the indebtedness of the old district together with the indebtedness to be created, and if the aggregate does not exceed the constitutional limitations, then it is not a violation of the Constitution.

"The fallacy of this argument as applied to the facts in the instant case permits the people's property in what was old school district No. 27 to be incumbered for school purposes with a bonded indebtedness exceeding five per centum of the taxable value of the property as shown by the last assessment. The law provides that the assets of the old district shall be applied to paying off the indebtedness of the old district. * * * The case, as here presented, shows that the indebtedness, so far as it affects district No. 27, increases the bonded indebtedness of that district to over five per centum of the taxable value of that district, and is in violation of the Constitution."

In the Zylstra case, the Washington supreme court, in adopting this viewpoint, stated (66 Wash. 326, 119 P. 798) :

"* * * It is manifest that the constitution intended to limit the amount of indebtedness any particular territory could incur for

school purposes to five per centum of the value of the taxable property therein, * * *. To hold with the relators' contention would be to do away with the limitation entirely, as the legislature, by providing for successive reincorporations of the same territory, could create a new limitation whenever the existing limitation should be reached."

It is true that a number of states have adopted an opposite viewpoint. See, Pinion v. Walker County School Dist. 203 Ga. 99, 45 S. E. (2d) 405; State ex rel. Consol. School Dist. v. Hackmann, 277 Mo. 56, 209 S. W. 92; Rapp v. Bethel-Tate Consol. School Dist. 58 Ohio App. 126, 16 N. E. (2d) 224; Walker v. Bennett, 125 S. C. 389, 118 S. E. 779; Welch v. Getzen, 85 S. C. 156, 67 S. E. 294.

These cases appear to adopt the separate-corporate-entity theory, and hold that where the law does not specify that the new corporation *must* assume the indebtedness of the former districts comprising it the limitation in question in each instance relates only to the bonded indebtedness for which the new corporation is actually liable, rather than to the property involved, or the total burden of indebtedness which it must bear.

In view of what I believe was the legislative intent in the enactment of § 475.53, subd. 4, I feel that the more logical reasoning is that of the Oklahoma and Washington courts; that it is the property within a district rather than the district or entity involved which must be considered in determining whether or not the debt limitation provided for in said section has been exceeded.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.