# BRICELYN SCHOOL DISTRICT NO. 132, FARIBAULT COUNTY, AND OTHERS v. BOARD OF COUNTY COMMISSIONERS OF FARIBAULT COUNTY.[1]

April 10, 1952.

No. 35,630.

[1]Reported in 55 N. W. (2d) 597.

*Seifert, Krahmer & Johnson,* for appellants.

*Harold C. Lindgren,* County Attorney, *Donald J. Callaghan,* Assistant County Attorney, and *Horan & Irvine,* for respondent.

CHRISTIANSON, JUSTICE.

This appeal arises from an order of the board of county commissioners of Faribault county granting a petition for the formation of a new common school district from certain territory in part included within Bricelyn School District No. 132. District No. 132 and others appealed to the district court from that order. The district court, after hearing the appeal, made findings of fact, conclusions of law, and order for judgment affirming the order of the county board. Appellants thereafter made an alternative motion for amended findings and conclusions or for a new trial, which was denied. They appeal from the order denying their motion.

Bricelyn School District No. 132 was duly established pursuant to the provisions of the school district reorganization act[2] (M. S. A. 1949, §§ 122.40 to 122.57), providing a new method for the reorganization of school districts in Minnesota. Thereafter, in March 1950, the formation of a common school district was sought under §§ 122.05 to 122.08 from lands which were in part included within District No. 132. The petition for the new district was filed pursuant to § 122.05, which provides:

"A majority of the freeholders, qualified to vote * · * *, residing in an incorporated village wherein there is no school house, or upon any territory not less than four sections in extent, * * * *whether or not such territory be in whole or in part included in any existing common, independent, or special school district,* may petition the board of county commissioners of the proper county to make such territory a school district, common or independent." (Italics supplied.)

_____
[2]L. 1947, c. 421, as amended by L. 1949, c. 666.

A hearing was held before the county board, and the petition was granted. Upon appeal to the district court from the order of the county board, appellants attacked the jurisdiction of the county board, as well as the propriety of its action. The district court affirmed. On appeal to this court, appellants contend that (1) the county board lacked jurisdiction to form a school district from lands which in part were situated within a school district organized pursuant to the school district reorganization act; and (2) the action of the county board was arbitrary and against the best interests of the territory affected.

Since the controlling question presented for decision is whether, in forming common or independent school districts under §§ 122.05 to 122.08, county boards have the power to include therein lands that are part of the territory of an existing school district previously established under the school reorganization act, the problem before us is strictly one of statutory interpretation or application.

■ The cardinal principle of all statutory interpretation is to ascertain and give effect to the legislative intent.[3] The problem which the school reorganization act was intended to remedy is quite clear. It is apparent that the legislature had in mind the problem of the small rural school district which was no longer able to furnish the educational facilities demanded by present-day standards of education.[4] Also, the legislature undoubtedly considered the burden placed on urban school districts by the closing of these rural districts and the consequent crowding of urban schools without a corresponding increase in revenue to meet their added needs.

When the reorganization act first came before this court in Huffman v. Independent Consol. School Dist. 230 Minn. 289, 295, 41

[3]See, Huffman v. Independent Consol. School Dist. 230 Minn. 289, 292, 41 N. W. (2d) 455, 457; Graybar Elec. Co. Inc. v. St. Paul Mercury Ind. Co. 208 Minn. 478, 482, 294 N. W. 654, 656; McSherry v. City of St. Paul, 202 Minn. 102, 105, 277 N. W. 541, 543; M. S. A. 645.16; 6 Dunnell, Dig. & Supp. § 8940.

[4]See, Huffman v. Independent Consol. School Dist. 230 Minn. 289, 293, 41 N. W. (2d) 455, 458.

N. W. (2d) 455, 459, the remedy which the new act was intended to furnish was considered, and the court there stated:

"It seems to us that the legislature, having in mind the purposes intended to be accomplished by the act providing for a reorganization of school districts, *intended to afford the newly organized and enlarged district sufficient money-raising power to enable it to accomplish the purposes for which it was organized.* * * *

"The single-teacher, single-room rural school is rapidly disappearing from the educational scene in Minnesota, and it seems that the very purpose of the reorganization act is to permit the formation of school districts of such size and nature as to be financially and economically able to provide equal educational opportunities to all children in the community. In order to do this, it will be necessary to erect many new or enlarged school buildings, which will require the expenditure of large sums of money." (Italics supplied.)

In ascertaining legislative intent, we are well advised to consider the preamble to the pertinent statute.[5] The preamble to L. 1949, c. 666, which strengthened the original reorganization act, though set out in full in the Huffman opinion, contains two clauses which warrant repetition here:

"WHEREAS, because of population trends and educational demands it becomes necessary to give consideration to the establishment of *sound educational units,* and

* * * * *

"WHEREAS, by the process of reorganization high school districts may be shaped into *sound economic units,* making available to all communities a good high school education, and" (Italics supplied.)

Obviously, the desirability of creating sound economic units to meet new educational needs was uppermost in the minds of the legislators.

In contradistinction to the pressing modern-day needs which prompted the school reorganization act, the power to form new

[5]See, Downing v. Independent School Dist. 207 Minn. 292, 301, 291 N. W. 613, 617.

school districts irrespective of the boundaries of existing districts was granted to the county boards almost 100 years ago.[6] We may well ask ourselves: Did the 1947 legislature, in enacting the school reorganization act, intend that the reorganized school districts established thereunder, which are designed to meet present rural educational needs, should be subject to destructive changes by means of proceedings instituted under a statute which was last fully considered by the legislature over ten years ago—long before the reorganization act was contemplated?[7]

■ But we are not limited to an historical approach in answering the question before us. As previously pointed out, the legislature clearly intended to provide a means for establishing larger school districts which would be sound economically, thereby enabling such districts to meet the increased financial demands of a large and complete modern educational system. Respondent, in effect, contends that county boards, on the petition of a group opposed to reorganization, have the power to form new school districts out of lands located in whole or in part within the reorganized district. If respondent's contention is sustained, county boards are in a position to destroy the sound economic unit which the legislature sought and for which a majority within the reorganized district voted.

The construction of a statute must be practical.[8] In our opinion, a practical construction would preclude the application of a statute permitting all or parts of a reorganized school district to be withdrawn so as to form a new district upon the petition of a dissident minority within the reorganized district and upon the affirmative vote of a majority of the county board. Such a construction not only would permit the destruction of the economic soundness of the reorganized district, which is one of its primary assets, but, where

---

[6]L. 1862, c. 1, § 5.

[7]L. 1941, c. 169, Art. III, § 5.

[8]See, Annala v. Bergman, 213 Minn. 173, 176, 6 N. W. (2d) 37, 39; Skuey v. Bjerkan, 173 Minn. 354, 356, 217 N. W. 358; Street v. C. M. & St. P. Ry. Co. 124 Minn. 517, 521, 145 N. W. 746, 747; 6 Dunnell, Dig. & Supp. § 8939.

the reorganized district embraces lands in more than one county, would make the order of the county board granting such petition binding upon residents of the district who reside in another county. This would be contrary to all principles of representative government and might lead to retaliatory action on the part of such non-residents before their own county board, prolonged litigation, and the ultimate destruction of the reorganized school district as a unit. Such an absurd intention cannot be ascribed to the legislature. M. S. A. 645.17(1). See, County of Ramsey v. Township of Lake Henry, 234 Minn. 119, 122, 47 N. W. (2d) 554, 556; Dahlberg v. Young, 231 Minn. 60, 64, 42 N. W. (2d) 570, 574; Stabs v. City of Tower, 229 Minn. 552, 557, 40 N. W. (2d) 362, 366-367; Township of Equality v. Township of Star, 200 Minn. 316, 320, 274 N. W. 219, 221; 6 Dunnell, Dig. & Supp. § 8947.

To hold that county boards are not vested with such powers is not to "freeze" *all* land within a reorganized district, since M. S. A. 1949, § 122.15, as amended by L. 1951, c. 31, provides a means whereby individual freeholders owning lands adjoining any school district may have their lands detached from the reorganized district and annexed to such adjoining district upon petition to the county board and *upon the approval of the school board for the reorganized district.*

Aside from the impractical and absurd result of a construction which would permit county boards to take large areas from reorganized districts, the act, standing alone, forbids such an interpretation.

The reorganization act provides in detail the procedure for the reorganization of school districts. First, there must be a decision to establish a school survey committee. Once that decision is made, the method of selecting the committee is detailed, as are the duties of the committee when selected. A tentative report is prepared and distribution thereof specified. Notice is provided, so that all residents of the proposed district can be heard. A final report is then prepared by the committee, and the means of appeal therefrom to an appeal board provided. Hearings must again be held and there-

after a vote taken. The foregoing synopsis is by no means complete, but it is sufficient to indicate that the legislature has provided a detailed plan intended to meet the needs which prompted the school reorganization act. At the same time it has safeguarded the rights of those affected by it.

To hold §§ 122.05 to 122.08 applicable to districts established under the reorganization act would be to ascribe to the legislature an intention to permit districts painstakingly created to be, comparatively, summarily destroyed.

A survey of the act discloses another factor which, to us, is most persuasive in determining the intention of the legislature. In one situation under M. S. A. 1949, § 122.52(1) [9] the legislature has provided that proposed districts will have received a majority of the votes only if they have received a majority in each of certain prescribed districts of the proposed new district. [10] In all other cases the proposed reorganized district will vote as a unit. This clearly manifests an intention not to predicate the existence of a reorganized district on the will of a majority in any one component part of the district. Rather, with one exception, the legislature has chosen to look to the will of a majority of *all* voters in the proposed district notwithstanding the will of a majority of any component part. To apply the statute so as to permit a component part of a reorganized district to be withdrawn and a new district formed therefrom in the manner provided by §§ 122.05 to 122.08 would be self-contradictory; it would, in fact, defeat the intent manifested by the legislature in this respect.

Respondent urges that the legislative powers granted county boards under §§ 122.05 to 122.08 are applicable to districts created

[9] Where any school district maintaining a graded elementary or high school, or both, is located within any proposed district, voting precincts are to be established inside of and outside of the limits of the urban district. To carry, a majority within and outside of the urban district must be in favor of the proposed district.

[10] M. S. A. 1945, § 122.16, dealing with consolidation of school districts within a village or city of the fourth class, also requires a majority in each of the component districts of the proposed new district.

under the reorganization act, because M. S. A. 1949, § 122.53, characterizes reorganized districts as "independent" districts, and § 122.05 specifically authorizes the formation of new districts, even though the territory be included within an existing "independent" school district.

A study of the reorganization act and its amendments indicates that reorganized districts were termed independent districts in § 122.53 without reference to the powers of the county boards under § 122.05.[11]

Chapter 122 of M. S. A. 1945 (§§ 122.01 to 122.32) deals generally with the organization, consolidation and dissolution of school districts. Section 122.01, though ostensibly describing the characteristics of the various types of school districts, actually constitutes a grant of specific powers to each type of school district. Section 122.01, subd. 4, states:

"An independent school district is a district organized as such having a board of six members, which board is vested with the authority to determine the length of school term and the tax levy."

The reorganization act as originally passed did not expressly grant these essential powers to the new type of school districts; but originally § 122.52[12] of the act incorporated by reference § 122.23 of the consolidation laws, which in turn declared that consolidated districts formed under its provisions thereby became independent school districts, with the "powers, duties, and privileges now conferred by law upon independent districts." When the original act was amended in 1949,[13] there was no further reference to § 122.23, nor was there explicit reference to the powers conferred upon in-

---

[11]However, § 122.53 provides:

"In case of the reorganization of two or more districts or parts of districts into a larger district, any portions or parts of divided districts which have less than four sections of land shall be attached to one or more adjoining districts by the board of county commissioners upon due notice and hearing as provided in Minnesota Statutes, Section 122.03."

[12]L. 1947, c. 421, § 13.

[13]L. 1949, c. 666.

dependent school districts by § 122.01. Rather, § 122.53 specifically declared that a district reorganized under the reorganization act "shall thereby become an independent school district."

Apparently the legislature enacted the foregoing provision in order to specify the size and duties of a school board under the reorganization act, since it could hardly be assumed that it would neglect to confer upon the reorganized districts these essential powers. This analysis is strengthened by the fact that M. S. A. 1949, § 122.55, subd. 2, simply assumes a school board of six members, though there is no express provision for such a board anywhere in the reorganization act.

Thus, in the light of the factors surrounding the enactment of the school district reorganization act and the impractical and absurd results which would follow from the interpretation urged by respondent, to say nothing of the destruction of legislative intent which would ensue, we conclude that the powers granted county boards under §§ 122.05 to 122.08 are not applicable to reorganized school districts established pursuant to M. S. A. 1949, §§ 122.40 to 122.57, and that the county board of Faribault county was without jurisdiction to form a new school district from lands located within Bricelyn School District No. 132.

It follows that the order of the district court must be reversed.

Reversed and remanded with directions to enter judgment for appellants.