## SUSAN M. KELLER v. INDEPENDENT SCHOOL DISTRICT NO. 742.

224 N. W. 2d 749.

December 20, 1974—No. 44757.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Richard H. Murray,* and *Robert R. Reinhart, Jr.,* for appellant.

*Howard I. Donohue,* for respondent.

TODD, JUSTICE.

Appeal from an order issued on October 26, 1973, by the Stearns County District Court upholding the order of the school board of Independent School District No. 742 terminating appellant's teaching contract. We affirm.

Appellant has been continuously employed by respondent school district as a speech clinician since the 1970-1971 school year. During the 1972-1973 school year, the district employed seven full-time and three part-time clinicians. Four of the full-time clinicians were paid out of the state and district funds and three were paid out of Title I funds.[1]

During the 1972-1973 school year, the district received several indications that the use of Title I funds would be severely restricted to specific programs in the future. The 1972-1973 guide-

---

[1] The Elementary and Secondary Education Act of 1965, Pub. L. 89-10, Title I, 79 Stat. 27.

lines of the Minnesota Department of Education prohibited the use of Title I funds for state mandated programs that require the expenditure of local funds, which funds then generate special reimbursement funds from the state. One example cited in the guidelines was the mandatory special education program required by Minn. St. 120.17.[2]

On March 22, 1972, Jack W. Hanson, Federal programs administrator of the Minnesota Department of Education, sent a memorandum to all local Title I directors and superintendents. The thrust of this memorandum was to reiterate the prohibition of the state guidelines. Superintendent of schools for respondent, Kermit L. Eastman, received a further communication from the Title I office indicating that respondent must alter its funding pattern of the speech handicap program.

As a result, a survey was conducted by Dr. James E. Henning, respondent's director of the special education program, to determine respondent's needs with respect to speech handicapped students. On the basis of the survey, Dr. Henning recommended the employment of six full-time clinicians. This recommendation was rejected.

On February 15, 1973, the board of education adopted a resolution discontinuing three full-time speech clinician positions. On the same date, the board adopted a resolution to terminate the contract of appellant. On February 16, 1973, the board notified appellant of the proposed termination, calling her attention to her right to a hearing. The notice stated:

"* * * [A] resolution was adopted by a majority vote of the

[2] Minn. St. 120.17, subd. 1, provides in part: "Every district and unorganized territory shall provide special instruction and services for handicapped children of school age who are residents of the district and who are handicapped as set forth in section 120.03, subdivisions 1, 2 and 3 * * *."

Minn. St. 120.03, subd. 1, provides in part: "Every child who * * * has defective speech * * * so that he needs special instruction and services, but who is educable, * * * is a handicapped child."

Board, proposing to terminate your teaching contract effective at the end of the 1972-73 school year pursuant to Minnesota Statutes 125.12 upon the grounds described in said statute and which are specifically as follows:

Discontinuance of Position, as follows:

1. Because the Title I funds used to support the speech clinician program are no longer available."

Appellant requested a hearing, which was held on March 22, 1973. Although there was testimony to the contrary, Dr. Henning testified that four full-time clinicians could adequately care for those children requiring intensive clinical services the following year.

On March 30, 1973, the board issued its written findings and order. The board made the following findings:

"4. That it now appears that it is uncertain whether or not Title I Funds will be available to Independent School District Number 742, for the calendar year 1973-74 and uncertain if available what sum or sums may be obtained and used to reimburse the School District for the salaries of any of its Speech Clinicians.

"5. That at about the first of the calendar year 1973, with uncertainty existing about the availability of Title I Funds, and in order to permit him to make staffing recommendations for the 1973-74 school year, the Director of Special Education for Independent School District Number 742 caused a survey to be made to determine the probable or projected number of speech handicapped children who will be in attendance at the public schools during the school year 1973-74.

"6. That based upon the survey the said Director of Special Education determined and the Board finds that the probable or projected number of speech handicapped children, whose handicap is severe, who will be in attendance at said schools during the school year 1973-74 is two hundred and ten (210).

"7. That in the judgment of said Director and the Board

finds that 210 children possessing a severe speech handicap, and that said 210 students can be provided with the person to person therapy required by four (4) full time Speech Clinicians or Therapists."

The board unconditionally terminated appellant's position effective at the end of the 1972-1973 school year.

On October 26, 1973, the Stearns County District Court affirmed the decision and order of the board, finding:

"That the Board of the Respondent had jurisdiction of the proceedings conducted before it and kept within that jurisdiction; that the *evidence* presented before said Board *furnished a reasonable and substantial basis for its decision and order;* that its *decision* was *not arbitrary, oppressive, unreasonable or fraudulent,* and that the Board proceeded with regularity and not on any erroneous theory of law." (Italics supplied.)

In its memorandum, the court stated:

"Minnesota Statutes Annotated, 125.12, Subdivision 6(e) provides that a tenured teacher's contract may be terminated for 'Discontinuance of position * * *.' The School District did discontinue petitioner's position, and did provide notice and hearing as required by the statute. The reasons for such termination, in the absence of bad faith, are not material.

\* \* \* \* \*

"The School Board in this case did not act in an arbitrary, oppressive or unreasonable manner, and this court should not attempt to substitute its judgment for that of the Board.

"State ex rel. Ging vs. Board of Education, 213 Minn. 550, 7 N. W. [2d] 544 [1942]."

Appellant challenges the district court's order on the grounds that an improper standard of review was applied in review of the school board's action and that the evidence does not support the board's findings.

The leading case in Minnesota interpreting the statutory pro-

cedure for termination based on discontinuance of position is State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 2d 544 (1942). In that case, we emphasized that discontinuance of position did not abrogate the hearing requirement:

"The very fact that a hearing is required where the asserted ground for discharge is 'discontinuance of position or lack of pupils' indicates that the legislature did not intend to leave the question of the actual existence of such ground to the arbitrary whim of the school board, but, as in other cases, to require the exercise of a sound and honest discretion based upon existing facts and circumstances of a substantial nature and upon a correct theory of law. But this is the full extent to which courts are permitted to inquire." 213 Minn. 570, 7 N. W. 2d 555.

However, we further recognized that the jurisdiction conferred upon the courts by way of certiorari is narrowly defined:

"* * * This is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of the law, or without any evidence to support it. A court cannot put itself in the place of the board, try the matter *de novo*, and substitute its findings for those of the board." 213 Minn. 571, 7 N. W. 2d 556.

In its order the district court indicated that it had reviewed the board's action for each of these factors and had found the proceedings to be regular in all aspects. We have also carefully reviewed the record and concur in the district court's findings.

In reviewing the board's decision to terminate appellant's contract, we must consider that Minn. St. 125.12 was enacted to protect teachers from arbitrary discharge. However, this legislation was not intended to place an unreasonable restriction on the powers which a school board must possess to effectively administer the operation of the public schools. In Foesch v. Independent

School District No. 646, 300 Minn. 478, 485, 223 N. W. 2d 371, 375 (1974), we stated:

"A board of education, when deciding whether to hire or to terminate a teacher, is acting in an administrative capacity, and a reviewing court on appeal can set aside that decision only when the determination of the administrative agency is fraudulent, arbitrary, unreasonable or not supported by substantial evidence on the record; not within its jurisdiction; or based on an erroneous theory of law. Lindgren v. City of Crystal, 295 Minn. 557, 204 N. W. 2d 444 (1973); Krakowski v. City of St. Cloud, 257 Minn. 415, 101 N. W. 2d 820 (1960)."

Affirmed.