**Stephen POIRIER, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 191, Respondent.**

**No. 47212.**

Supreme Court of Minnesota.

June 17, 1977.

---

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Eric R. Miller and Mark S. Olson, St. Paul, for appellant.

Peterson, Popovich, Knutson & Flynn and Paul W. Hetland, St. Paul, for respondent.

Heard before TODD, YETKA and PLUNKETT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

The appellant teacher brought an action for declaratory relief and damages, requesting a determination that the contract issued by the respondent school district violated Minn.St. 125.12. The case was tried on a stipulated set of facts in Dakota County District Court. The trial court held that the contract did not violate the statute. The appellant appeals from the judgment entered in favor of the respondent. We affirm.

The issue presented by this appeal is whether, pursuant to Minn.St. 125.12, a school district may enter into a teaching contract with a probationary teacher for a period of employment of less than one school year.

Prior to the trial of this matter in the district court, the parties stipulated to the facts. That stipulation of facts is as follows:

"The parties through their respective counsel stipulate the following facts for the purposes of trial in this matter:

"1. The plaintiff was a 'teacher' as defined in M.S. § 125.12 Subd. 1 during the 1974–75 school year.

"2. The plaintiff was a 'probationary' teacher within the meaning of M.S. § 125.12 Subd. 3 during the 1974–75 school year.

"3. Plaintiff was verbally offered employment by the defendant at the start of the 1974–75 school year which employment

was specifically limited to the first quarter of the 1974–75 school year. The defendant's normal high school year of September through June is divided into four quarters of approximately equal time.

"4. Plaintiff was initially employed by the defendant on a full-time basis for the first quarter as a substitute teacher and was not provided with a written contract subject to the provisions of M.S. § 125.12.

"5. Defendant subsequently provided the plaintiff with a written contract dated September 30, 1974 (a copy of which is attached hereto as Exhibit A) which contract provided that the term of employment was only effective from September 27, 1974 until November 1, 1974.

"6. The contract (Exhibit A) was entered into pursuant to and was subject to M.S. § 125.12.

"7. At no time prior to or in conjunction with the plaintiff's signing of the contract (Exhibit A) was the plaintiff offered any choice between employment limited to the first quarter of the school year and any other greater period of time within the 1974–75 school year.

"8. In discussions with plaintiff concerning his employment, defendant's representatives described his position as being for the first quarter of the 1974–75 school year. Defendant's representatives also stated that the position would be continued if the high school mathematics enrollment justified its continuance. Defendant's representatives further stated that as a general rule each teacher employed on a quarterly basis had in the past received employment for all four quarters, thereupon plaintiff accepted defendant's offer of employment with the expectation that he would be employed for all four quarters of the 1974–75 school year.

"9. Plaintiff's employment as a teacher was extended through the second quarter of the 1974–75 school year (from November 4, 1974 through January 20, 1975) pursuant to a memorandum dated October 21, 1974 (attached as Exhibit B) on the basis of .6 of a fulltime position.

"10. At no time prior to or in conjunction with the plaintiff's employment by the defendant for an additional quarter pursuant to the October 21, 1974 memorandum (Exhibit B) was the plaintiff offered a choice between employment limited to the second quarter of the 1974–75 school year and any other greater period of time within the 1974–75 school year.

"11. Plaintiff was employed by the defendant as a teacher up to January 20, 1975, on which date the plaintiff's employment ceased.

"12. Plaintiff was notified in advance, both orally and in writing, (a copy of the written notice is attached hereto as Exhibit C) of the fact that his employment would be terminated effective January 20, 1975.

"13. Plaintiff was not provided a hearing incident to the termination of his teaching contract.

"14. Defendant issued quarterly contracts to several probationary teachers during the 1974–75 school year. Plaintiff was the only such teacher who was not employed for all four quarters of the school year (see Exhibit D).

"15. The defendant has only utilized quarterly teaching contracts with respect to some of the teachers in their first year of employment and has offered contracts for four quarters to all other teachers each school year since 1972–73.

"16. The school board for the defendant passed two resolutions on March 6, 1975 which respectively terminated the plaintiff's teaching contract effective January 20, 1975 and nonrenewed the plaintiff's contract for the 1975–76 school year (a copy of which is attached hereto as Exhibit E).

"17. Plaintiff received a written notice dated March 10, 1975 from the defendant which informed the plaintiff of the resolutions passed on March 6, 1975 (a copy of which is attached hereto as Exhibit F).

"18. Plaintiff requested that the defendant provide a written list of the reasons supporting the plaintiff's termination and non-renewal and the defendant provided the reasons in a letter dated March 19, 1975

(a copy of which is attached hereto as Exhibit G).

"19. The use of quarterly teaching contracts by the defendant was an integral part of the school district's academic program during the 1974–75 school year.

"20. Plaintiff was willing and able to perform teaching services for the defendant at the time of his termination and for the balance of the 1974–75 school year."

The parties also agreed to the introduction of Exhibit A, which is the contract between the school board and the individual teacher in this case, which states:

"EXHIBIT A

"BURNSVILLE EAGAN SAVAGE
PUBLIC SCHOOLS
TEACHER CONTRACT

"Independent School District No. 191

"The School Board of Independent School District No. 191, of the State of Minnesota, enters into this agreement, pursuant to M.S. 125.12 as amended, with Stephen Poirier, a legally qualified and certificated teacher who agrees to teach in the public schools of said district as Secondary Instructor for the school year 74–75 (eff. 9/27/74–11/1/74).

"The following provisions shall apply and are a part of this contract:

"1. Basic Services: Said teacher shall faithfully perform the teaching and other professional services prescribed by the school board or its designated representative, abide by the rules and regulations as established by the school board and any additions or amendments thereto for the annual salary indicated below, and agrees to teach in the schools of said district as assigned in such grades or subjects for which the teacher has the necessary certification.

"2. Duration: This contract is subject to the provisions of M.S. 125.12 as amended and to all laws of the State of Minnesota relevant to qualification, certification, employment, termination and discharge for cause of teachers. Thereafter this contract shall remain in full force and effect except if modified by mutual consent of the school board and the teacher or unless terminated as provided by law, or by written resignation by the teacher.

"3. Calendar: School year and vacation days shall be those named on the school calendar as adopted by the school board, and the teacher agrees to teach on those legal holidays on which the school board is authorized to conduct school if the school board so determines.

"4. This contract shall be subject to and consistent with the Master Agreement between the school district and the exclusive representative and the provisions of P.E.L.R.A. Laws of Minnesota as amended.

"In consideration thereof, the school board agrees to pay said teacher the following annual salary: $1,109—1st qtr. (8500 × 24/184) for basic services.

"IN WITNESS THEREOF we have subscribed our signatures this 30th day of Sept., 1974.

STEPHEN M. POIRIER
Teacher

EMERY H. WHITE
Chairman

MICHAEL E. YUIMU
Clerk"

A portion of the trial court's memorandum accompanying his findings of fact and conclusions of law is herein set forth:

"In the stipulation of facts, both parties agreed that Section 125.12 is the applicable statute and that the petitioner is a probationary teacher within the meaning of that statute. Under Subdivision 3, any *annual* contract of a probationary teacher may or may not be renewed as the school board sees fit. Written notice of termination or non-renewal must be given before April 1st of that Academic *year.* If reasons for termination are requested by the teacher, the board must

give a written explanation plus a statement of appropriate supervision within 10 days of receiving the request. According to the statutory language a probationary teacher is only afforded notice and hearing if discharged for cause during his contract term. The Court feels under the stipulated facts that the procedural requirements of the statute were complied with by the school board in determining a non-renewal of the contract herein.

"The central issue that appears to be presented to this Court is the problem that arises due to the 'quarterly' nature of the contract. M.S.A. 125.12, Subdivision 3, clearly refers to 'annual contracts' and 'school year'. It would appear to this Court that the statute permits only one contract between a teacher and a school board in a single 12 month period. The entire statutory scheme centers around protecting teachers from arbitrary discharge while not placing unreasonable restrictions on the powers which a school board must possess to effectively administer operation of public schools. *Keller vs. Independent School District No. 742,* [302 Minn. 324] 224 N.W.2d 749. This Court feels that the contract is an annual contract within the meaning of Section 125.12. The contract specifically says it is 'pursuant to M.S.A. 125.12 as amended.' Provision No. 2 referring to duration purports to make the statutory language applicable, the date specified in the contract form are the 'school year 74–75', and the compensation is expressed in terms of 'annual salary'. The only alteration on the face of the contract is a notation '(eff. 9/22/74–11/1/74)', which indicates that the petitioner's duties are to take place in that time period. The statute does not require that a teacher, as a party to either an annual or a continuing contract, provides services during the entire term of the contract. In fact in most school districts the practice has almost uniformly been to the contrary. It

would appear to this Court that the parties may, under the reference statute, agree that the services to be performed by a teacher be in a period less than the term of the contract. It would therefore seem to this court that the annual contract between the petitioner and the school board which specifies that the petitioner's duties are to be performed during the first quarter is within the preview of the statute."

The portion of the trial court memorandum cited above appears to us to be a sound interpretation of the statute.

At oral argument counsel for the parties admitted that most contracts for a school year are for teaching assignments that consume only 9 to 10 months of the year. Counsel for appellant admitted that if a district were to adopt a 6 month semester basis with two semesters a year, it would be permitted under the statute to engage in the use of contracts for assignments of 6 months duration with two separate sets of teachers. If that is the case, we can see little merit in the distinction between the guarantee of a 6 month assignment and a 3 month assignment.

Insofar as the effect of the extension of the contract in this case for a second quarter is concerned, we believe that it was simply a modification of the earlier contract. Modification of teachers' contracts are commonplace. Such flexibility must exist if school districts are to be administered effectively. As a result of the modification, if appellant had been rehired for a second year it would be required that the period of service be for a minimum of two quarters rather than one. Also, the contract gave the appellant one year's tenure because it was for the school year.[1]

The trial court is affirmed.

OTIS, J., took no part in the consideration or decision of this case.

1. We note that in this case there was no showing of bad faith on the part of the school district. Prior to entering into the contract with appellant the school district made it clear that the contract was for services to be per-

formed for only the first quarter. The district was on a quarterly basis. If the district had acted in bad faith, our decision might be otherwise.