**In re Hearing on the Termination of MARY SILVESTRI'S TEACHING CONTRACT WITH INDEPENDENT SCHOOL DISTRICT NO. 695.**

No. C9–91–1532.

Court of Appeals of Minnesota.

Jan. 21, 1992.

Review Denied March 19, 1992.

Charles W. Faulkner, Brian C. Southwell, Faulkner & Faulkner, Minneapolis, for relator Mary Silvestri.

John D. Kelly, Cheryl M. Prince, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for respondent School Dist.

Considered and decided by FORSBERG, P.J., and KALITOWSKI and FLEMING,* JJ.

## OPINION

FORSBERG, Judge.

Relator Mary Silvestri challenges the decision of Independent School District No. 695 to terminate her on the grounds of (1) having a continuing disability and inability to qualify for reinstatement in accordance with Minn.Stat. § 125.12, subd. 7 and (2) insubordination. She claims she qualified for reinstatement because she provided evidence of a physician who had earlier examined her stating that she had recovered from her mental illness. We agree and reverse.

## FACTS

Silvestri is a 43–year–old fourth-grade teacher with tenure in the Chisholm school system. On February 6, 1986, the superintendent recommended to the school board that they relieve Silvestri of her teaching duties, pending the outcome of a mental health evaluation.

On March 17, 1986, Silvestri was examined by Dr. Joseph Spencer, a licensed psychiatrist chosen by her from a list of three provided by the school board. Dr. Spencer concluded Silvestri suffered from a "paranoid thought disorder" and concluded "it would not serve [her] best interest * * *

---

\* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

for her employment to continue at this time."

Silvestri disagreed with Dr. Spencer's findings, and requested a panel examination pursuant to Minn.Stat. § 125.12, subd. 7. The school board chose Dr. Spencer to be on the panel and Silvestri chose Dr. Randall LaKosky. The third panel member was Dr. Lee H. Beecher. After the exam, Dr. Beecher and Dr. Spencer concluded Silvestri is afflicted with a "mental illness" and should be "removed from classroom teaching until such time as she is capable of resuming the conduct of her teaching duties in a proper manner." Dr. LaKosky did not submit a report at that time. He had, however, previously sent a letter to Silvestri's attorney in conjunction with an unrelated workers' compensation claim. In that letter, Dr. LaKosky stated Silvestri "suffers a severe psychological disability."

Based upon these reports, the school board voted to suspend Silvestri on September 23, 1986, until such time as she presented evidence of her eligibility for reinstatement as provided by Minn.Stat. § 125.12, subd. 7, or until otherwise terminated.

By letter dated September 16, 1987, Dr. LaKosky informed the school district he believed Silvestri was fit to resume teaching. Dr. LaKosky stated that he had treated Silvestri for the past 20 months, and that she was "fully recovered, has been for six months fully recovered, and is not apt to have any more psychological problems in the future."

The school district informed Silvestri it would not reinstate her on the basis of Dr. LaKosky's letter alone. Silvestri later responded to the school board, stating that the letter from Dr. LaKosky satisfied the statutory requirement of "evidence from such a physician of sufficient recovery to be capable of resuming performance of duties in a proper manner." *See* Minn. Stat. § 125.12, subd. 7 (1986).

On April 30, 1990, Dr. LaKosky again informed the school district that in his opinion, Silvestri was "psychologically capable of returning to work as a teacher." Silvestri demanded to be reinstated.

On May 15, 1990, the school board adopted the following resolution:

1. [Ms.] Silvestri will not be reinstated on the basis of Dr. LaKosky's reports of September 16, 1987 and April 30, 1990.

2. [Ms.] Silvestri may be reinstated to her teaching position only after complying with the provisions of M.S.A. § 125.-12, Subd. 7. To be reinstated, [Ms.] Silvestri must first undergo an examination by a physician she selects from a list of not less than three examiners designated by the School Board.

3. [Ms.] Silvestri will have a period of ten days from May 21, 1990 to advise the Board in writing whether she will undergo such an examination. If [Ms.] Silvestri declines to undergo such an examination, or she fails to advise the Board in writing of her decision within the time designated, the Board intends to initiate a termination proceeding pursuant to M.S.A. § 125.12, Subds. 7 and 8.

Because the school board had not heard from Silvestri by December 10, 1990, the school district began termination proceedings. A hearing was held on May 20, 1991, before a hearing examiner appointed by the school district. The hearing examiner concluded that Silvestri had provided evidence from a competent physician that she had recovered from her disability, that the school district did not have the right to require her to submit to further examination prior to reinstatement, and that she should be reinstated to her position as a teacher. The school district rejected the hearing examiner's findings, and adopted its own terminating Silvestri on the following grounds:

(a) Continuing disability subsequent to a 12-month leave of absence and inability to qualify for reinstatement in accordance with M.S.A. § 125.12, subd. 7.

(b) Insubordination by refusing to cooperate with the School District's efforts to determine her current health status.

## ISSUE

Does "evidence from such a physician" in Minn.Stat. § 125.12, subd. 7 require evidence from a physician chosen using the

same process outlined for suspension or evidence from any of the physicians from the panel of three who previously examined the teacher during the suspension procedure?

## ANALYSIS

■ The critical determination in this case is the interpretation of "such a physician" within Minn.Stat. § 125.12, subd. 7 (1986). In order to be reinstated, Silvestri submitted a report by Dr. LaKosky within 12 months of her suspension that stated she had fully recovered and would be able to resume teaching. Dr. LaKosky was the physician Silvestri had chosen to be a member of the three-physician panel during the suspension process. Silvestri claims Dr. LaKosky's report constitutes evidence "from such a physician."

The construction of a statute is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1990).

Minn.Stat. § 125.12, subd. 7 (1986) provides:

> Subd. 7. **Suspension and leave of absence for health reasons.** Affliction with active tuberculosis or other communicable disease, mental illness, drug or alcoholic addiction, or other serious incapacity shall be grounds for temporary suspension and leave of absence while the teacher is suffering from such disability. Unless the teacher consents, such action shall be taken only upon evidence that suspension is required from a physician who has examined the teacher. The physician shall be competent in the field involved and shall be selected by the teacher from a list of three provided by the school board, and the examination shall be at the expense of the school district. A copy of the report of the physician shall be furnished the teacher upon request. If the teacher fails to submit to the examination within the pre- scribed time, the board may discharge the teacher, effective immediately. In the event of mental illness, if the teacher submits to such an examination and the examining physician's or psychiatrist's statement is unacceptable to the teacher or the board, a panel of three physicians or psychiatrists shall be selected to ex- amine the teacher at the board's expense. The board and the teacher shall each select a member of this panel, and these two members shall select a third member. The panel shall examine the teacher and submit a statement of its findings and conclusions to the board. Upon re- ceipt and consideration of the statement from the panel the board may suspend the teacher. The board shall notify the teacher in writing of such suspension and the reasons therefor. During the leave of absence the teacher shall be paid sick leave benefits by the district up to the amount of unused accumulated sick leave, and after it is exhausted, the dis- trict may in its discretion pay additional benefits. *The teacher shall be reinstat- ed to the teacher's position upon evi- dence from such a physician of suffi- cient recovery to be capable of resum- ing performance of duties in a proper manner.* In the event that the teacher does not qualify for reinstatement within 12 months after the date of suspension, the continuing disability may be a ground for discharge under subdivision 8.

(Emphasis added.)

The first task in interpreting a statute "is simply to examine the language of the statute and, '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Swenson v. Emerson Elec. Co.*, 374 N.W.2d 690, 699 (Minn.1985) (quot- ing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)), *cert. denied*, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). "[W]here the stat- ute is unambiguous and its provisions are couched in plain and simple language, a court is bound to give effect to the statute as written." *McCarty v. Village of Nash-*

*wauk,* 286 Minn. 240, 244–45, 175 N.W.2d 144, 147 (1970). Extrinsic aids to determine legislative intent may only be used if ambiguity exists. *Christopherson v. Fed. Land Bank,* 388 N.W.2d 373, 374 (Minn. 1986).

Here, the statute is clear and unambiguous. Minn.Stat. § 125.12, subd. 7 provides two different procedures, one for suspension and another for reinstatement. An examination by a physician chosen from a list of three is required prior to suspension, but no such examination is required prior to reinstatement. The phrase "evidence from such a physician" comes immediately after language discussing the role of the physicians in the suspension.

"General words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08(3) (1990). The word "such" is defined as "meaning of the sort or degree previously indicated or contextually implied; having the quality already or just specified." *State v. End,* 232 Minn. 266, 270, 45 N.W.2d 378, 380 (1950) (citing *Webster's New Int'l Dictionary* 2518 (2d ed. 1947)). Given these rules of construction, it is clear that the phrase "such a physician" refers to those three specific physicians who participated in the suspension process. Dr. LaKosky's September 1987 letter thus satisfies the statutory language, and requires reinstatement of Silvestri.

The school district also terminated Silvestri for insubordination. Insubordination is a " 'constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.' " *Ray v. Minneapolis Bd. of Educ.,* 295 Minn. 13, 17, 202 N.W.2d 375, 378 (1972) (quoting *Shockley v. Board of Educ.,* 51 Del. 537, 541, 149 A.2d 331, 334, *rev'd on other grounds,* 52 Del. 237, 155 A.2d 323 (1959)).

However, the school board had no authority to require Silvestri to submit to an examination by a physician chosen from a list provided by the school board. Minn. Stat. § 125.12, subd. 7 does not require that procedure for reinstatement, but only for suspension. Silvestri's attempt to follow the proper statutory procedure for reinstatement cannot be considered insubordination.

Even though the statute as it reads may not always reach a desired result, it is not our role to amend legislation. Because Silvestri provided evidence from one of the physicians from the panel who had previously examined her during the suspension procedure, the school district was required to reinstate her. Its decision to terminate her is therefore reversed. Silvestri shall be reinstated and provided back pay to September 16, 1987, the date she provided evidence from Dr. LaKosky of her recovery.

## DECISION

Reversed.

FLEMING, Judge (dissenting).

I respectfully dissent with respect to the majority's interpretation of the language "such a physician" in Minn.Stat. § 125.12, subd. 7 (1986). Based upon the underlying purpose of the suspension and reinstatement provisions of the teacher tenure laws, the legislature must have intended the language "such a physician" to refer to a physician chosen by the same process as that for suspension.

When the language of a statute is ambiguous, the appellate court must "determine the probable legislative intent and give the statute a construction that is consistent with that intent." *Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986). When the language of a statute is unclear, this court should interpret the statute as consistently with the purpose of the act as possible. *See* Minn.Stat. § 645.16 (1990); *Huffman v. Independent Consol. School Dist.,* 230 Minn. 289, 292, 41 N.W.2d 455, 457 (1950).

The purpose underlying school board termination and teacher tenure laws is to provide for a balance of interests. The laws must consider the prevention of arbitrary discharges of teachers without regard to the their ability, balanced against the role of the local school board of attempting to make the best selections consonant with

the public good. *Kroll v. Independent School Dist. No. 593*, 304 N.W.2d 338, 344 (Minn.1981), *see also Keller v. Independent School Dist. No. 742*, 302 Minn. 324, 328–29, 224 N.W.2d 749, 752 (1974); *McSherry v. City of St. Paul*, 202 Minn. 102, 108, 277 N.W. 541, 544 (1938).

This legislative intent is illustrated by the detailed procedure established in Minn. Stat. § 125.12, subd. 7 for suspension. First, the statute requires examination of the teacher by a qualified physician chosen by the teacher from a list of three presented by the school district. *Id.* If, after that evaluation, the teacher disagrees with the conclusions reached by the physician, the teacher can request an examination by a panel of three physicians. *Id.* That panel is comprised of one doctor chosen by the school board, one doctor chosen by the teacher and a third chosen by the other two examiners. *Id.* The process allows both parties to contribute to the determination, while providing certainty that an impartial result will be obtained. This procedure is consistent with the purpose of the act. Thus, for the purposes of reinstatement, the term "such a physician" must refer back to the suspension process in order to be consistent with the stated intent underlying the statute. Therefore, both the teacher and the school board will have input into the selection and neither party will have exclusive control over the outcome.

Based upon relator's theory, a teacher seeking reinstatement would have sole control over the selection of the physician to support reinstatement. Under that interpretation, the teacher would only need to choose the physician selected by her in conjunction with the earlier suspension proceeding in order to satisfy the statutory requirement. The district court in the mandamus proceeding did not seem to find this problematic. That court reasoned "no physician could ethically render such an opinion without a factual basis for it, no matter where the physician's sympathies may lie." However, even if this is true, because facts can be interpreted in a variety of ways, it appears that following the suspension procedure for reinstatement purposes allows for more accurate results.

Relator claims that a review of the legislative history of Minn.Stat. § 125.12, subd. 7 proves the term "such a physician" refers to one of the panel who has already examined her during the suspension process. She urges this court to interpret the legislature's omission of a detailed panel examination procedure prior to reinstatement as clear evidence that the legislature considered the position advocated by the school district and rejected it. However, the legislature may have decided to omit the panel examination language from the reinstatement portion of the statute merely in an attempt to avoid being repetitive.

The purpose of the teacher tenure laws is to provide a balance between the school board and the teachers' interests. *Kroll*, 304 N.W.2d at 344. Thus, requiring a neutral process for reinstatement appears to be more consistent with the legislative intent than relator's interpretation. Therefore, I would interpret "such a physician" within the meaning of Minn.Stat. § 125.12, subd. 7 to mean a physician chosen using the same process outlined for suspension.