GRAYBAR ELECTRIC COMPANY, INC. v.
ST. PAUL MERCURY INDEMNITY COMPANY
OF ST. PAUL.[1]

November 8, 1940.

No. 32,491.

[1]Reported in 294 N. W. 654.

*Cummins & Cummins* and *Theodore Christianson, Jr.,* for appellant.

*C. J. Wagner, J. A. Mansfield,* and *Godley & Olson,* for respondent.

HILTON, JUSTICE.

Because the trial court certified the question after overruling a demurrer to the complaint, the appeal is properly here.

In November, 1938, plaintiff's assignor, John Stemmer, contracted with Warren C. Little, a licensed master electrician, for the construction of a complete, workable electric system sufficient to comply with designated requirements. It is averred that the installation was constructed improperly, illegally, and in an unworkmanlike manner. It is also alleged that requirements specified were not met and that unsuitable materials were used.

Defendant is being sued on the theory that the electrician's bond it executed for Little under 3 Mason Minn. St. 1940 Supp. § 5874, renders it liable.

Formerly 1 Mason Minn. St. 1927, §§ 5872-5879, governed electricians. Section 5874 of that enactment read:

"Every master electrician shall before receiving license as such give bond to the state in the penal sum of five thousand dollars, which bond shall be approved by, and filed with, said state board of electricity. This bond to be conditioned upon the faithful performance of all work entered upon or contracted for by said master. * * * An action may be maintained on said bond by any person injured or damaged through the want of skill or the use of unsuitable or improper material in the performance of any work contracted for or undertaken by said master electrician."

By L. 1937, c. 314, §§ 1-9, 3 Mason Minn. St. 1940 Supp. §§ 5872 to 5879-1, an amendatory enactment, more comprehensive than the previous statutes, was adopted. Section 3 provided that "Mason's Minnesota Statutes of 1927, Section 5874, be and the same hereby is amended to read as follows." Section 3 copies verbatim the first two sentences of the amended statute. Then follow requirements for master electricians, journeyman electricians, and special electricians. The portion of § 5874 which expressly gave a right of action on the bond to persons injured is dropped entirely.

By the bond's language, the principal and surety are "firmly bound unto the state of Minnesota." It is conditioned as follows:

"Now therefore in case said license * * * shall be granted * * * if the said principal, shall well and faithfully perform any and all work * * * and shall employ proper and reasonable skill in such work and shall use only suitable and proper material * * * then this obligation shall be void."

Defendant argues that neither the bond nor the statute gives a right of action except to the state. Premises for this are that the state is the only obligee named in the bond or required by § 3 and that the 1937 enactment indicates a clear legislative intent to deny a right of action on the bond save to the state.

The original statutes governing the licensing and regulation of electricians were detailed but not so comprehensive in character as the present. Obviously the 1937 legislation was to satisfy a public need. The public is the actual beneficiary of the legislation. It is dependent entirely upon the state to formulate and assert standards for electricians. This dependency arises because the average individual has only a slight acquaintance with electrical properties. Beyond this, reliance must be made upon the possessor of tech-

nical knowledge. Defective work results in injury to the individual. The state's interest, as anciently, is in the well-being of its citizens and in their freedom from injury by those licensed under state laws. The substantive loss still remains personal, and for redress there is no governmental responsibility except to provide the legal processes. When the legislature licenses a particular occupational group under bond as a part of a general statutory enactment to protect the public in its relations with this group, ordinarily, absent clear language to the contrary, the most reasonable inference is that a right of action exists on the bond for those to be protected. This is especially true where, as in § 3, there is an express condition that the obligation of the surety is conditioned upon the "faithful performance of all work entered upon or contracted for." Surely such language is far from inconsistent with a right to sue. Certainly, as a practical matter, it is more reasonable to conclude that more was intended than a penal bond upon which the state could punish the defaulting licensee. No doubt a penal bond as well as an indemnity bond could be conditioned upon the faithful performance of all work. But we think that the view that an indemnity bond was intended is more consistent with reality. The amendment of 1937 is virtually a new governing law and should not be restricted by technical consideration of its predecessor. Were the present statute, § 3, devoid of legislative history, we would not hesitate to hold that plaintiff could sue on the bond.

Defendant, and not without force, has produced arguments which must be discussed before the conclusion expressed can be adopted in finality. It is brought out that an amendment "so as to read as follows" takes the place of the original statute and operates as a repeal of all not embraced in the amendment, St. P. M. & M. Ry. Co. v. Broulette, 65 Minn. 367, 370, 67 N. W. 1010, 1012, or omitted. Mannheimer Bros. v. Kansas C. & S. Co. 147

Minn. 350, 180 N. W. 229. To these we add that legislative intention must also be ascertained, for this is the vital consideration. Gerdts v. Gerdts, 196 Minn. 599, 601, 265 N. W. 811. While ordinarily it is supposed that the legislature intended a change in the law when it enacts an amendment, it should also be noted that in many instances the change intended is only verbal where the language or component parts of the statute are repetitious. It seems more reasonable to believe that the legislature regarded the first two sentences of 1 Mason Minn. St. 1927, § 5874, as sufficient to give a right of action on the bond and for this reason dropped the specific language.

We are dealing here with a specific amendatory enactment covering the whole field of electricians and regulation of them. Ascertainment of legislative intendment is always a question of reconciling and understanding the specific matter involved. Rules of construction, like other principles, are generalizations from past specific instances. If there is to be justice through law, application of set rules of construction must be employed with a proper regard for legislative intention. The determination of this is the ultimate responsibility of the court in the absence of a clear declaration. A court should permit this intent to control if the language employed is reasonably expressive. It is our conclusion that the legislature did not intend to destroy the right to sue on the bond. The dropping of the specific grant operates as a repeal of the portion relating to it, but it does not necessarily negative the finding of that right in the other and adopted language of the statute.

Appellant cites divers sections of our statutes and points out that in other sections dealing with the licensing under bond of certain occupational groups, specific grant is made of the right to sue on the bond. Thus it is in the liquor dealer's bond, 3 Mason Minn. St. 1940 Supp. § 3200-26, and in the wholesaler dealer's bond, *Id.* § 6240-18½e. It is

argued that since these and others expressly cover the matter, if the legislature intended suit on the electrician's bond, specific authority would have been given in the amendment of 1937. This is a factor to consider. Still, it might well be pointed out that the legislature with extreme clarity has evidenced a policy to permit suit upon bonds securing occupational licenses. There is nothing in the language of the present statute that indicates that an electrician's bond should be an exception to such a policy. There would be little question were it not for the dropping of the mentioned portion in 1937. But since the legislature has made indemnity bonds the requisite in nearly every instance involving the licensing of similar occupational groups, the most natural and practical inference is that the language used in the 1937 amendment was regarded as sufficient to express this policy with respect to electrician's bonds. The purpose and nature of a bond of this character is, in substance, indistinguishable from those securing other forms of licenses. There is simply no rationality in allowing suit in one instance and disallowing it in the other. Such an arbitrary intention should only be found with the greatest hesitancy.

Defendant relies upon Mannheimer Bros. v. Kansas C. & S. Co. 147 Minn. 350, 180 N. W. 229. That decision presents a close parallel to the instant appeal. But it must be remembered, as always, that what was there said was referable to the particular statutes under consideration. We do not think that the particular statutes here involved compel us to reach the same conclusion as was done in the Mannheimer case. Although a literal approach was taken in that decision, we do not repudiate it in any manner. We think that the paramount consideration is the legislative intention and, as to this, we have expressed our conclusion.

Cases have been carefully gathered and argued by appellant. Attention has been given them. But it must be re-

membered that what we are here doing is construing a statute covering a designated field, and with its own legislative history and background. As such, we think individual treatment should be given. Discussion of cases will not aid materially.

Since the rule is that "statutory bonds must be construed in the light of the statute creating the obligations intended to be secured, and either extended or restricted in scope, as the case may be, to cases contemplated by the statute, unless violence thus be done to the language of the bond," Vukmirovich v. Nickolich, 123 Minn. 165, 168, 143 N. W. 255, 256, the plaintiff, having right by statute, can sue on the bond although the named obligee is the state of Minnesota. It must be understood that the obligee is for the benefit of itself and those beneficially entitled to sue under the law requiring the bond.

The order appealed from is affirmed.

Order affirmed.

HOLT, JUSTICE (dissenting).

I dissent. The origin of the law requiring a master electrician to furnish a bond to the state, in order to carry on as such, is L. 1899, c. 312, § 8. The act was incorporated in R. L. 1905, and is § 2359 thereof. That section contains this sentence:

"An action may be maintained on said bond by any person injured or damaged through want of skill, or the use of unsuitable or improper material, in the performance of any work contracted for or undertaken by said master electrician or his servants or employees."

This sentence is also in G. S. 1913, § 5084, being a transposition into that code of R. L. 1905, § 2359, and is in 1 Mason Minn. St. 1927, where G. S. 1913, § 5084, appeared as § 5874. Successive legislatures since the adoption of R. L. 1905 have retained the quoted sentence in the section relating to the bond exacted by the state of the

master electrician. I think we may not conclude that the legislature of 1937 regarded the sentence quoted as mere surplusage and therefore dropped it out of § 5874 by L. 1937, c. 314, § 3. The same legislature amended another act wherein a bond running to the state is required of a licensee, but the provision therein authorizing others than the obligee in the bond to sue thereon was not eliminated. L. 1937, c. 296, § 6, 3 Mason Minn. St. 1940 Supp. § 5071. It may be said that the practice of the legislatures has been to provide in enactments in which penal bonds are required to run to the state to clearly state therein that the bond is for the benefit of others than the obligee who may maintain suit thereon. Such statement or declaration has been so uniformly inserted in such acts that it may be said to be a rule followed by all legislatures in this state. As examples I refer to liquor dealers' bonds, G. S. 1913, §§ 3117, 3200; Mason Minn. St. 1927, §§ 4254-5, 5015-11, 5071, 5237 and 5238, 5245, 5844 and 5846, 5851, 5882, 5889, 5940, 6202, 6240-4, 8964, 9698, 9700; 3 Mason Minn. St. 1940 Supp. §§ 3200-26, 3996-10, 5285-15 and 5285-22, 5887-30n, 6240-18½e, 7774-43. No provision is found in 1 Mason Minn. St. 1927, §§ 5232, 6584, that they are for the benefit of others than the obligee in the bond or that anyone else may sue thereon, and it is extremely doubtful that courts could construe the acts of which such sections are a part so that any other than the obligee could sue on the bond.

That the sentence above quoted was expunged or put out of the law as theretofore existing is clear not only from the title of L. 1937, c. 314, but from § 3 thereof, whereby § 5874 of the code of 1927 is made to read in specific words wholly omitting the sentence mentioned. That the omitted sentence must be regarded by the courts as repealed seems clear from this language in Mannheimer Bros. v. Kansas C. & S. Co. 147 Minn. 350, 354, 180 N. W. 229, 231:

"But the legislature first put it in the statute and later took it out, thereby indicating its purpose to change the scope and operation of the statute. We must take the statute as we now find it and are controlled by the familiar rule that, where an amendatory act is a substitute for the original statute, it repeals those parts of the prior act which it omits." (Citing prior decisions.)

If the legislature inadvertently or otherwise dropped the quoted sentence from § 5874 by the amendment of 1937, the courts are not at liberty to reinsert it. The court cannot amend or correct the statutes. Nor should the change be construed as if the omitted part was mere surplusage. Ever since the act first appeared the now expunged sentence was deemed important and clearly indicated that anyone injured or damaged by the master electrician's want of skill or use of unsuitable or improper material in the work he contracted or undertook to perform might sue on the bond he gave to the state. It is argued that the bond served no useful purpose if only the state may enforce it. To that contention the answer is that the law carries penalties for violation of the rules and regulations under which a licensed master electrician must work; and where fines are imposed in addition to imprisonment the state might resort to the bond. Moreover, the state or its departments have no doubt much work done by master electricians where damage or injury might result from unskillful performance thereof. Again, it may be suggested that the legislature did not think it fair that a master electrician must guarantee every contract he makes not only as to his own skill, but as to material used, which material he must obtain from others and defects in which neither he nor the manufacturer could well discover.