# ANCHOR CASUALTY COMPANY v. COMMISSIONER OF SECURITIES AND OTHERS.

107 N. W. (2d) 234.

January 13, 1961—No. 38,001.

*Meagher, Geer, Markham & Anderson, Manson Reedal, M. J. Coyne,* and *O. C. Adamson II,* for appellant.

*Marlon O. Haugen, Keith Bradley, Bernard G. Zimpfer, Walter F. Mondale,* Attorney General, and *Harold J. Soderberg,* Assistant Attorney General, for respondents.

LOEVINGER, JUSTICE.

This is a declaratory judgment action to determine the scope of a bond.

Plaintiff, a paid corporate surety, issued a series of bonds for one Drew Forsman pursuant to Minn. St. 82.03, subd. 3,[1] a provision of the real estate brokers' licensing act. Subsequently, the private defendants sued to recover losses resulting from alleged fraud of Forsman in real estate transactions. Plaintiff then brought this action to determine the extent of its liability upon the bonds for claims against Forsman, alleging that the commissioner of securities was the only party entitled to enforce its obligation upon the bonds and that its aggregate liability for all claims under each bond was limited to $2,000. The district court rendered judgment declaring that persons claiming injury by the acts of the principal were entitled to enforce the obligation of the bonds, and that the liability of plaintiff under each bond was $10,000.

Plaintiff does not seriously dispute that those claiming injury are entitled to enforce its obligation upon the bonds. From views previously expressed by this court, logic, and practical considerations, it appears that when the legislature licenses a particular occupational group, and requires a bond for such license as part of a general scheme to protect the public, the bond is an indemnity bond rather than a penal bond. The state's interest in occupational licensure is the well-being of its citizens and their freedom from injury by those licensed. The public is the actual beneficiary of such legislation. Any loss by misconduct of a licensee is personal to the injured citizen. The responsibility of government is to provide redress for such loss through legal process.[2] Accordingly, one claiming injury has a right to bring suit directly upon such a bond. The judgment of the lower court to this effect should be affirmed.

[1] L. 1955, c. 489, § 3, subd. 3, as amended by L. 1959, c. 335, § 5. This case arose and is decided under the provisions of the 1955 act, although the 1959 act does not appear to have made any changes material to the point determined here.

[2] Graybar Elec. Co. v. St. Paul Mercury Ind. Co. 208 Minn. 478, 294 N. W. 654.

With respect to the amount of liability, the bonds by their own terms were written for $10,000 each and upon their face covered any loss, not exceeding this sum, resulting from fraud in connection with any real estate transaction engaged in by the principal or any of his salesmen. However, the plaintiff invokes the rule that "[s]tatutory bonds must be construed in the light of the statute creating the obligations intended to be secured, and either extended or restricted in scope, as the case may be, to cases contemplated by the statute, unless violence thus be done to the language of the bond."[3]

Under this principle we have held that the obligation of a statutory bond may be extended beyond its express terms to include a provision of the statute not explicitly written therein.[4] But this is the converse case. The statutory requirement involved here is that (Minn. St. 82.03, subd. 3):

"* * * The bond shall be in the amount of $1,000 for each salesman, and $2,000 for a broker plus $1,000 for each salesman employed by such broker but not to exceed a maximum bond of $10,000, * * *."

Plaintiff contends that this means the state requires a bond in the amount of $2,000 for each real estate broker and a bond in the amount of $1,000 from each salesman, plus an additional bond in the amount of $1,000 to be filed by each broker on behalf of each salesman employed by him. Plaintiff concedes that this introduces ambiguity into the statute, including the question of whether or not the maximum obligation upon the broker's bond should be $10,000 altogether or $2,000 for the broker plus $10,000 for his salesmen. However, plaintiff argues that this provides a uniform fund of $2,000 for the broker and each of his salesmen as indemnity against any misconduct, whereas any other interpretation of the statute would lead to unequal amounts being available to claimants for the defalcation of the broker and his salesmen, depending upon the order in which claims were brought to suit.

---

[3]Vukmirovich v. Nickolich, 123 Minn. 165, 168, 143 N. W. 255, 256.
[4]Guaranteed Gravel & Sand Co. v. Aetna Cas. & Surety Co. 174 Minn. 366, 219 N. W. 546.

In the case of this, as of most other similar statutes, it is easy enough to pose hypothetical situations in which application of the statute produces unequal results. Statutes that impose limitations on amount of liability, or that set other specified quantitative limits or requirements, are, of course, arbitrary in the sense that their operation is fixed and inflexible. Quantitative statutory requirements are also necessarily somewhat arbitrary since there is seldom any compelling reason why the quantity should be the amount specified, rather than a little more or a little less. Any definite limit is somewhat arbitrary, and any limit that is not arbitrary is necessarily indefinite. But this does not mean that a statute with a quantitative limit or requirement is oppressive, capricious, or unreasonable.

It would not be practical to require bonds to be written in an indefinite amount. In establishing requirements for occupational licensure, the legislature has complete discretion to make the requirements definite and specific, so long as they are not oppressive, capricious, or unreasonable.

Section 82.03, subd. 3, under which this bond was written, requires each real estate broker to file a bond in a minimum amount of $2,000, which amount is increased by an additional $1,000 for each salesman employed to a maximum of $10,000. These amounts are certainly not unreasonable. A broker who employs more salesmen may be expected to have more responsibility and to require a larger bond. On the other hand, it is competent for the legislature to establish a maximum amount required. There is nothing unreasonable in requiring a broker who employs eight or more salesmen to file a maximum bond of $10,000, and a broker with fewer salesmen to file a smaller bond. If it had been intended to require only a uniform fund of $2,000 to insure the fidelity of the broker and each salesman, it would have been easy enough to require a bond in such terms.[5] A "schedule bond" specifying the limit of liability for each person covered is a well-known device. Therefore it appears, and we hold, that the statute involved here required of real estate brokers a bond in the

---

[5]See, e. g., Shaw v. Metropolitan Cas. Ins. Co. (5 Cir.) 62 F. (2d) 133, 88 A. L. R. 453, with Annotation at 455.

amount of $2,000 plus an amount of $1,000 for each salesman employed by the broker, with a limitation of $10,000 on the broker's bond.

This conclusion makes it unnecessary to consider, and so we do not decide, whether a statutory bond should be limited to the obligation required by statute despite broader language in the instrument itself.

The obligation required by the statute is that the entire amount of the bond be available for the satisfaction of any claims against either the broker or any salesman employed by him for loss resulting from fraud, dishonesty, forgery, or theft in connection with any real estate transaction by the broker or any salesman he employs. There is nothing more that can be said nor any precedent that can be cited that will make this liability any clearer than the plain language of the statute itself. The judgment of the district court as to the extent of the plaintiff's liability was correct.

Affirmed.