MILWAUKEE ENFORCERS, INC., a domestic corporation, Plaintiff-Appellant, v. BALL, d/b/a BALL BROTHERS CONTRACTORS, Defendant: AETNA CASUALTY & SURETY COMPANY, a foreign corporation, and another, Defendants-Respondents.

*No. 547 (1974). Submitted on briefs January 7, 1976.—
Decided February 3, 1976.*
(Also reported in 237 N. W. 2d 715.)

For the appellant there was a brief by *Eisenberg & Kletzke* of Milwaukee.

For defendant-respondent Aetna Casualty & Surety Company, there was a brief by *Thomas N. Klug* and *Borgelt, Powell, Peterson & Frauen*, all of Milwaukee.

For defendant-respondent City of Milwaukee, there was a brief by *James B. Brennan*, city attorney, and *Charles R. Theis*, assistant city attorney.

HANLEY, J. The sole issue presented is whether the city's policy of performance bonding of licensed improvement contractors provides for the payment of bond proceeds to persons harmed by such contractors' defaults.

The dispute here is affected by the determination of the nature of this bond. Appellant has admitted that the purpose of the bond was to deter contractor failures and ordinance violations, but it is also claimed that the bond is an "automatic source of funds in the event of any damage caused by the contractor's breach of the contract and/or ordinance."

It has been well summarized in 12 Am. Jur. 2d, *Bonds* sec. 1 (1964) that:

"The term bond . . . includes . . . penal bonds conditioned upon the performance of duties of office, or other obligations undertaken by the principal obligor in the bond or collateral things to be done by the principal obligor; and indemnity and fidelity bonds or undertakings to indemnify the obligee against loss from conduct of the principal. . . .

". . .

"A bond may be either single or conditional; . . . it is conditional when the obligor undertakes for himself, his heirs, administrators, or executors to pay a fixed sum of money upon condition that if he does some particular act, the obligation shall be void, or stipulates that the obligation shall remain in full force in the event the obligor does some particular act or fails to do such an act. The only covenant or promise to pay by the obligor in such bonds is to pay the penalty if the condition is not fulfilled; they are otherwise known as penal bonds."

The bond here in question has the principal and surety, as well as their "heirs, executors and administrators," binding themselves to pay the "penal sum" of $1,000. This obligation "shall be void" if the principal fulfills the condition, repeated above, of complete work in accordance with all ordinances; otherwise the obligation remains in full force and effect. It is also provided that the aggregate liability of the surety for all claims shall not exceed the penal sum of $1,000. Its form meets the above description of a conditional, penal bond.

Aetna cites certain features of the bond to support this conclusion. The bond names only the city as obligee and recites that the payment condition is in abeyance as long as the contractor performs so as to "protect fully health, safety and welfare of the public," which is the bases for municipal police power. *Courtesy Cab Co. v. Johnson* (1960), 10 Wis. 2d 426, 432, 103 N. W. 2d 17. The bond and ordinance also recite that the obligation of the con-

tractor is to comply with ordinances regulating his livelihood. Finally, the absence of any reference to indemnification in the bond and ordinance and the presence of the "penal sum" language is also cited.

These contentions are not conclusively determinative of the question of whether a bond required in a licensed occupation does not partake of indemnity even if bearing penal characteristics. *See Anchor Casualty Co. v. Commissioner of Securities* (1961), 259 Minn. 277, 107 N. W. 2d 234. The use of the phrase "penal sum," for example, has been construed in this state to refer to a penalty which is invoked to correspond with actual damage, rather than being a liquidated damage upon any breach. *City of Madison v. American Sanitary Engineering Co.* (1903), 118 Wis. 480, 502, 503, 95 N. W. 1097. Also, the ordinance first requires that the contractor "perform and sufficiently complete all work engaged in" and then "guarantee that the contractor will perform in accordance with all the provisions" of the section and other ordinances. The bond couples these duties as one without distinction, such that mere default seemingly does not violate the condition. Finally, this court has recognized that bonds may be for the benefit of one other than the named obligee, *Fidelity & Deposit Co. of Maryland v. Madson* (1930), 202 Wis. 271, 276, 232 N. W. 525, and that the intended beneficiary may maintain an action for the proceeds. Therefore, at best, the form of the bond does not compel that it necessarily be construed as the respondents contend.

Appellant relies heavily on *Anchor Casualty, supra,* and its forerunner, *Graybar Electric Co. v. St. Paul Mercury Indemnity Co.* (1940), 208 Minn. 478, 294 N. W. 654. In *Graybar,* a state statute required master electricians to give bond to the state in the penal sum of $5,000, such bond to be conditioned upon "the faithful performance of all work entered upon or contracted for

by said master." The immediate predecessor of the law contained the exact same language but also contained a provision allowing a private right of action on the bond to those injured or damaged through want of skill or improper materials used by the electrician. The court in *Graybar* chose not to view the trimming of a right to sue under certain circumstances as foreclosing the bond from enabling suit by the public for defaults. Other statutes providing specific rights to sue for indemnity were seen as evidence of an overall legislative intent for indemnity rather than merely penal provisions.

*Anchor Casualty* generally followed the *Graybar Case* conclusion that

"[w]hen the legislature licenses a particular occupational group, under bond as a part of a general statutory enactment to protect the public in its relations with this group, ordinarily, absent clear language to the contrary, the most reasonable inference is that a right of action exists on the bond for those to be protected." 294 N. W. at 655.

It also characterized such bonds as indemnity bonds rather than penal bonds. The bond there involved licensing of real estate brokers, apparently without a specific default condition being imposed.

The above-quoted rule of *Graybar* is helpful when legislative intent to that end may be discerned from the whole of the law or from similar statutes. In our state, much of the function of bonding, especially for public officials, is defined by sec. 19.01 (2), Stats., and private suits are permitted to those harmed by such bonded officers, sec. 19.02. Another group of enterprises are bonded "payable to the state for the benefit of" those who would suffer from enterprise defaults. *See, e.g.,* sec. 100.06 (2) (dairy plant) ; sec. 100.03 (2) (food processor) ; sec. 440.41 (5) (professional fund raiser). Direct action on the surety is also allowed in some statutes.

*See:* sec. 440.61 (6) (c) (itinerant truckers) ; sec. 289.035 (construction contractor, private works) ; sec. 289.14 (construction contractor, public works) ; sec. 194.41 (a) (common carrier indemnity bond).

Other statutes provide for bonds with penal sums enforceable only by the state. *See:* sec. 98.14 (milk bottle manufacturer). In some cases the bonds seem to have an indemnification purpose. Sec. 144.86 (mining operations) ; sec. 58.05 (6) (private mental institutions).

Any difficulty in finding a drafting intent as to whether the statutory bonds may be the object of third party actions is not so present in the ordinance involved here. *Graybar* compels that such intent be reviewed. In that case, the Minnesota court found the purpose of the statute to be one of private indemnification. In this case, clearly, the ordinance was intended only for penal recourse by the city.

The facial resemblance of the city-approved bond to a penal bond is one factor. Of more importance is the form of the pre-existing similar ordinances which applied to electricians (sec. 37–12 (f)) and plumbers (sec. 40–1 (i)). They are excepted from the bonding and liability provisions of the home improvement contractor section because of their established requirements. The performance bonds applicable to them, as defined by the ordinances, are conditioned

". . . that the applicant will perform and sufficiently complete all work for which a permit or permits are issued in accordance with the electrical (plumbing) code of the state of Wisconsin, city of Milwaukee and all other ordinances of the city . . . so as to fully protect the public health, safety and welfare."

This language does not specifically admit of a wholly separate condition of incomplete performance which seems to exist in sec. 95–14 because of the attempt to mirror these ordinances. Even if the drafters of the

home improvement ordinance did intend to designate noncompletion as an independent condition for reviving the bond payment obligation, it is clear that such condition is intended only within the penal structure enforceable by the city. If a separate right was intended for third party beneficiaries, the drafter would have undoubtedly employed the form used in sec. 85–05 (2) pertaining to auctioneers: that bond runs to the city and "to such parties as may be damaged by the violation" of the code provisions on auctions, with the condition that the bond "indemnify any purchaser at a public auction who suffers any loss by reason of misrepresentations in said auction sales."

Appellant contends that this construction results in an unjust enrichment of the city through the guise of the public good. The appellant is under the misconception that the bond proceeds are being held by the obligee city rather than the surety, who will undoubtedly demand proof that the condition has been violated irrespective of whether the claimant is the named obligee or a third party beneficiary. Also the Enforcers acknowledge that its private right of suit against the contractor is unabated.

Another misconception is the evident belief of the Enforcers that the city will get a windfall of $1,000 upon the violation. As has been clearly stated in *City of Madison, supra,* and repeated in *State v. Hackbarth* (1938), 228 Wis. 108, 279 N. W. 687, the penal sum is the aggregate limit (as is reiterated in the bond) of the surety's obligation: a breach of condition must be reduced to an actual damage, such as the forfeiture provided in the ordinance for its violation, a sum between $25 and $250. Sec. 95–14 (8) (c). Unjust enrichment rather occurs when the Enforcers institutes a civil action for the whole of its claimed damages and also seeks to collect an additional "penalty" of $1,000.

We conclude that the trial court acted properly in sustaining the respondents' demurrers to the amended complaint without leave to amend.

*By the Court.*—Order affirmed.