16235

HUTTO v. AMERICAN FIRE & CASUALTY INS. CO. *ET AL.*
(54 S. E. (2d) 523)

Affirmed.

*Mr. N. A. Turner,* of Columbia, *for Appellant,*

*Messrs. C. T. Graydon and J. Bratton Davis,* of Columbia, *for Appellant,*

*Messrs. Tompkins, Tompkins & McMaster,* of Columbia, *for Respondent,*

July 6, 1949.

Oxner, Justice.

About 8:00 P. M. on February 20, 1947, a taxicab in which Ray R. Hutto was riding as a paying passenger collided with a truck at the intersection of Whaley and Assembly Streets in the City of Columbia. In August, 1947, this action was brought against I. D. Redmon, doing business as the Blue Bell Cab Company, and S. B. Forsythe, doing business as Columbia Dairies, owners, respectively, of the taxicab and truck mentioned, to recover damages for personal injuries sustained by Hutto as a result of said collision. The American Fire and Casualty Insurance Company was joined as a party defendant under an allegation that it issued, pursuant to an ordinance of the City of Columbia, a public liability policy upon the taxicabs operated by Redmon. It was alleged in the complaint that plaintiff's injuries were caused by the joint negligence of the drivers of the two vehicles. Both individual defendants denied liability. The American Company alleged that the policy issued by it had been previously cancelled and that at the time of the collision the coverage on Redmon's taxicabs was carried by the Keystone Mutual Casualty Company.

At the conclusion of plaintiff's testimony, each defendant made a motion for a nonsuit. All motions were refused. At the conclusion of all the testimony, the Court granted a motion by Forsythe for a directed verdict upon the ground that the undisputed evidence showed that at the time of the collision the driver of the truck was not acting within the scope of his employment but was on a purely personal mission. A motion for a directed verdict made by Redmon upon the ground that the accident was due to the sole negligence of the driver of the truck and that there was no evidence showing any actionable negligence on the part of the driver of the taxicab, was refused. The American Company made a

motion for a directed verdict upon the ground that its policy had been cancelled prior to the mishap, and upon the further ground that in no event was there any coverage on the particular cab involved in the collision. This motion was also refused. The jury was instructed that if Redmon, as owner of the taxicab company, was liable, the American Company would also be liable for the amount of any actual damages within the policy limit, which was $5,000.00. The jury returned a verdict against Redmon and the American Company for $4,500.00. A motion for a new trial was overruled and both of these defendants have appealed.

We shall first consider the appeal by the American Company.

During December, 1945, an ordinance was passed by the City of Columbia which provided that after December 31, 1945, no permit for the operation of taxicabs should be granted unless the owner first procured and filed with the City Clerk either an indemnity bond or "an insurance policy covering the operation of each vehicle in some indemnity or casualty company authorized to write such insurance and doing business in the State of South Carolina", conditioned upon the payment, within certain stated limits, of any judgment recovered against the owner growing out of the operation of such taxicabs. It was further stated: "It shall be deemed a compliance with this section of this ordinance for the owner or operator of such vehicle to file with the City Clerk a copy of such bond or such insurance policy, properly certified by the company in which such bond or insurance policy is written, and in which the owner or operator of such vehicle has procured such bond or insurance policy in compliance with the provisions of this section of this ordinance. The bond or insurance policy shall cover a period of time not less than one year, and shall contain a provision that it shall not be cancelled by the insurer or insured until after five days' written notice of the intention to cancel is given the City Clerk."

It appears that after the passage of this ordinance all matters relating to liability insurance on taxicabs were handled by the Traffic Division of the Police Department and the policies were filed with that Department rather than with the City Clerk as stated in the ordinance.

Redmon had been engaged in the taxi business for several years and at the time of the accident was operating about fifteen taxicabs. His insurance was handled by the Harper Insurance Agency of Columbia, who represented both the American Fire and Casualty Insurance Company and the Keystone Mutual Casualty Company. The members of this firm were thoroughly familiar with the requirements of the ordinance heretofore mentioned. Pursuant to its terms, this agency filed (the record does not disclose when) with the Police Department a master liability policy issued by the American Company. The policy was originally written for a term of one year beginning February 25, 1943. It was later extended for an additional year. Thereafter by an endorsement dated February 25, 1945, it was stipulated: "It is hereby agreed that the term of policy is to read—February 25, 1945,—until discontinued."

According to the testimony of a partner in the Harper Insurance Agency, the American policy expired on February 25, 1946, and was then replaced by the Keystone policy which was in effect at the time of the collision. Redmon testified that the Harper Insurance Agency attended to all of his insurance requirements and that he knew nothing of the change of his insurer until he received the Keystone policy during the spring of 1946.

It is the contention of the American Company that its policy expired on February 25, 1946, or approximately a year prior to the date of the accident. It is undisputed that the Keystone policy was never filed with the Police Department and that after the accident the American policy was found in its files with no indication that it had been cancelled or terminated. There is no evidence expressly showing cancellation

by the American Company prior to the accident. It contends, however, that the circumstances hereinafter mentioned were sufficient to show cancellation or at least to warrant the submission of that question to the jury.

Apparently every taxicab company in the City of Columbia was required annually to secure a license to do business and in the application therefor to give certain information, including the name of the insurer covering public liability. In Redmon's application made on February 4, 1946, he listed the American Company as its insurer, and in the application of February 8, 1947, he listed the Keystone Company as insurer. There was also offered in evidence a letter from the Harper Insurance Agency to the Columbia Police Department, dated February 25, 1946, which was as follows: "This is to certify that we have the following Taxicabs insured for Public Liability with limits of $5,000.00; $10,000-.00 BI and $1,000.00 PD in the Keystone Mutual Casualty Company of Pittsburg, Pennsylvania. The assured is I. D. Redmon d/b/a Blue Bell Cab Company, 901 Harden St., Columbia, S. C. * * * (Here there is set out a description of thirteen vehicles showing model, make, motor number, serial number, policy number and cab number). We trust you will find this entirely in order." A member of the firm of the Harper Insurance Agency testified that this letter was mailed in due course. One of the police officers testified that it was not delivered to the Police Department until August, 1947, the month in which this action was instituted. For the purpose of this discussion, the conflict in the evidence will be resolved in favor of the American Company and we shall assume that the letter was mailed on February 25, 1946.

On September 17, 1947, about a month following the institution of this action, the Vice-President and Treasurer of American wrote the Columbia Police Department as follows:

"In regard to master policy R64 in the name of I. D. Redmon, d/b/a as Blue Bell Cab Company, coverage under this policy was intended to apply only to automobiles described

in certificates and according to our records this company has had no coverage on any automobile for this assured under this master policy since February 25, 1946, at which time the insurance was placed with another company and our policy was not supposed to be in force after that date as we have collected no premium on any automobile insured under this policy since February 25, 1946.

"We will appreciate your marking your records accordingly."

The Secretary of the American Company testified that according to the home office records the policy issued to Redmon expired on February 25, 1946; that no premiums were received for coverage after that date; that the Harper Insurance Agency represented his company in the City of Columbia; that he had no knowledge of the requirements of the city ordinance in question; and that the only communication ever made by the home office with reference to cancellation of this policy was contained in the letter of the Vice-President and Treasurer hereinabove set out.

It appears that the Keystone Company became insolvent and went into bankruptcy in June, 1947.

In determining whether the American policy had been effectively cancelled prior to the accident as against respondent, we must keep in mind the purpose of the ordinance and the character of coverage involved. It was intended to make certain that taxicabs operating on the streets of Columbia should at no time be without public liability insurance. The right to operate a taxicab is conditioned upon subsistence of such coverage, which must be evidenced by a policy on file with the City Clerk or Police Department. The manifest purpose of this ordinance is the protection of passengers and members of the public who may be injured or their property damaged through the negligent operation of taxicabs by financially irresponsible owners. *Ott v. American Fidelity & Casualty Co.,* 161 S. C. 314, 159 S. E. 635, 76 A. L. R. 4; *Bryant v. Blue Bird Cab Co. et al.,* 202 S. C.

456, 25 S. E. (2d) 489; *Croft v. Hall et al.,* 208 S. C. 187, 37 S. E. (2d) 537. The provisions of the ordinance must be read into the policy. *Kimbrell v. Heffner et al.,* 163 S. C. 35, 161 S. E. 175, 80 A. L. R. 591; *Bryant v. Blue Bird Cab Co. et al., supra.*

An annotation on the subject of cancellation of compulsory motor vehicle insurance will be found in 171 A. L. R. page 550. It is well settled that notice of cancellation under an ordinance or statute of the character here involved must be definite and certain. *Fidelity & Casualty Co. of New York v. Jacks,* 231 Ala. 394, 165 So. 242; *Gulesian v. Senibaldi,* 289 Mass. 384, 194 N. E. 119.

The American policy was the only one ever filed with the Police Department. It bore an endorsement that it was to remain in effect "until discontinued", and at the time of the collision there was nothing thereon indicating cancellation or discontinuance. It is true that other insurance had been procured under a policy issued by the Keystone Company but this was not equivalent to notice of cancellation. The Keystone policy was never filed. The ordinance clearly requires that the policy, or a certified copy thereof, shall be filed with the City authorities. It is then accessible to the public. The ordinance does not contemplate that an injured person should have to inquire into the state of accounts between the insurer and insured. The Harper Insurance Agency, who represented both insurers, had not only constructive notice but actual knowledge of the requirement that the policy be kept on file with the Police Department, and ignored it when the Keystone policy was issued. While the letter of this agency to the Police Department under date of February 25, 1946, and the application for license by Redmon made on February 8, 1947, indicated that Redmon had coverage with the Keystone Company, no reference is made therein to the American policy. Neither the letter nor the application was sufficient to clearly and definitely show an intention to cancel, particularly when

the Keystone policy was never filed. No definite notice of cancellation was given until September 17, 1947, approximately six months after the accident, when the Vice-President and Treasurer of the American Company wrote the letter heretofore mentioned.

The case of *Amalgamated Casualty Insurance Co. v. Winslow*, 77 U. S. App. D. C. 382, 135 F. (2d) 663, 664, involved a statute requiring all operators of taxis in the District of Columbia to file with the Public Utilities Commission a bond or policy of liability insurance, which could not be cancelled until after twenty days' written notice of intention to cancel was given to the Commission. Winslow sustained personal injuries on October 30, 1940, caused by the negligent operation of a taxicab owned by one Elliott. It appeared that the Amalgamated Casualty Insurance Company issued to Elliott a liability insurance policy covering the cab in question on June 16, 1940, and filed the required certificate with the Commission. On October 6, 1940, the Pennsylvania Casualty Company issued to Elliott a policy covering the same car and filed the required certificate with the Commission. From that time on, Pennsylvania received premiums and Amalgamated did not. As above stated, the injury occurred on October 30, 1940. On the same day, but after the accident, Amalgamated notified the Commission that it was cancelling its policy. At the time of the accident the Commission's records showed that Elliott was insured in both Amalgamated and Pennsylvania. Both companies were solvent. In holding that the first policy had not been cancelled as against the person injured, the Court said:

"Amalgamated contends that the statutory requirement of notice of cancellation is intended only to protect the pub-lic from the operation of uninsured cabs. It concedes that it would be liable to appellee if Elliott had not been covered by a new policy in a solvent company, but contends that since he was covered it is not liable. We do not agree. Whether or not appellant's policy was, as against Elliott, effectively

cancelled before the accident, we think the statute and the endorsement on the policy forbid us to hold that it was canceled as against appellee and the public. The express requirement of notice of cancellation does not except cases in which new insurance has been taken out."

We conclude that at the time of the accident American's policy was in force so far as the rights of respondent are concerned. This is the only question we need determine. We do not decide any issues between the American Company and Redmon and nothing we have said shall be construed as any intimation of opinion thereabout.

The American Company further contends that even if the policy was in force at the time of the accident, it did not cover the particular taxicab involved in the collision, which was a 1946 Plymouth purchased by Redmon in July, 1946. This car was used to replace a 1941 Plymouth.

No specific vehicles were described in the master policy. In the space provided for that purpose, the following appears: "Per certificate to be issued at the written request of the insured." It was shown that certificates were subsequently issued covering various taxicabs operated by Redmon, but it is conceded that no certificate was ever filed with the Police Department. Article 9 of the policy provides in substance that if the insured acquires another automobile and notifies the company to that effect within thirty days following the date of its delivery to him, the insurance thereunder shall apply to such subsequently acquired automobile as of the delivery date. The policy also contains the following endorsement: "It is agreed that Insuring Agreement IX of the Policy, 'Automatic insurance for Newly Acquired Automobile', applies to any automobile which may be acquired by the Named Insured to be used as a taxicab." According to American's testimony, it was never notified of the acquisition of the 1946 Plymouth and the only certificate covering this car was isued by the Keystone Company.

We do not think appellant's contention can be sustained. It does not take into account the character of insurance here involved. We must assume that the policy was intended to effectuate the purpose of the ordinance in compliance with which it was filed, and it must be construed in the light of such ordinance. *Ott v. American Fidelity and Casualty Company, supra*; *Small v. National Surety Corporation,* 199 S. C. 392, 19 S. E. (2d) 658. The protection which the ordinance was designed to give would be very uncertain and insecure if it were dependent upon certificates being subsequently issued covering each taxicab. Certainly it was not contemplated that the burden should rest upon the Police Department of checking daily with each operator of taxicabs to ascertain whether new cars had been acquired and proper certificates issued. Evidently the Harper Insurance Agency, who represented the American, regarded the matter of issuing certificates as one solely between the insurer and insured, as this agency made no effort to file any certificates with the Police Department. The case of *Brownlee v. Charleston Motor Express Company et al.,* 189 S. C. 204, 200 S. E. 819, tends to sustain the foregoing conclusion.

We now turn to the appeal by Redmon.

Error is assigned in refusing his motion for a directed verdict upon the ground that the testimony did not disclose any actionable negligence on the part of the taxicab driver. There was abundant evidence tending to show that the taxicab was being driven at a rate of speed in excess of the maximum permitted by the city ordinance and that the driver failed to keep a proper lookout. It must be kept in mind that Redmon was a common carrier for hire and owed to respondent, a paying passenger, the highest degree of care. *Squires v. Henderson,* 208 S. C. 58, 36 S. E. (2d) 738. We think the motion for a directed verdict was properly refused.

It is contended that Redmon was prejudiced by the fact that his liability was submitted to the jury along with that of the American Company. Having concluded that the taxicab in question was covered by the American policy, it follows that this assignment of error is without merit.

The remaining exceptions of Redmon relate to the admissibility of testimony. It is claimed that the Court erred in allowing American to show that the Keystone Company had gone into bankruptcy. There was no objection by Redmon's counsel. (Counsel for Redmon on this appeal did not represent him during the trial). It is also contended that the trial Judge erred in allowing testimony to the effect that Keystone "was not a very large insurance company." The testimony complained of was as follows: "Q. Was the Keystone Mutual Casualty Company considered a large company, in comparison with other liability and casualty companies doing business here? A. Well, there are some a whole lot larger." The error, if any, was harmless.

One of the witnesses testified that it was "hard to get" liability coverage on taxicabs. Counsel for Redmon moved to strike this testimony on the ground that it was irrelevant. The motion was refused. Redmon has excepted to this ruling. Subsequently, without objection, another witness testified that while the American decided to discontinue liability coverage on taxicabs, other companies "were scrambling for it". Under the circumstances, the exception is overruled.

Finally, it is claimed that the Court erred in allowing respondent to testify that he did not receive proper medical care from the attending physician, who was furnished by Redmon. We do not think the testimony admitted is reasonably susceptible to that construction. Apart from this, however, Redmon's counsel, without reservation of objection, later cross-examined respondent as to the same

matter to which he had previously objected, and also went fully into the subject thereafter in the examination of the attending physician.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.