0048

Julian R. WATSON, Jr., and Barbara J. Watson, Appellants, v. B. Stuart HARMON and The Aetna Casualty & Surety Company, Respondents.

(312 S. E. (2d) 8)

Court of Appeals

*William F. Halligan,* of Columbia, *for appellants.*

*Robert W. Herlong,* of *Barnes, Austin & Lightsey,* Columbia, *for respondents.*

January 16, 1984.

GOOLSBY, Judge:

The sole issue presented by this appeal is whether an action may be maintained by members of the public, the appellants Julian R. Watson and Barbara J. Watson, on a statutory bond submitted in lieu of proof of financial responsibility by a licensed home builder, B. Stuart Harmon, against the surety, The Aetna Casualty & Surety Company, where the statute authorizing the bond does not expressly give a right of action on the bond to persons damaged by acts or omissions of the home builder. We hold that such an action can be brought. The judgment below is reversed and the action is remanded for trial.

The Watsons and Harmon entered into an oral agreement calling for Harmon to construct a large room on the side of the Watsons' residence, enlarge and remodel an existing bathroom, and install a new roof over both the older part of the house and the addition. The Watsons knew Harmon had been licensed by the appropriate state agency, the South Carolina Residential Home Builders Commission (Commission), and they were told by Harmon that he was bonded. They believed the bond protected them.

In preparing the new roof for installation, Harmon removed the then existing roof but did not promptly build the new roof. While the roof was uncovered, heavy rain fell and extensively damaged the Watsons' residence and personal property.

The Watsons filed a complaint alleging in the first two causes of action that Harmon was liable to them for damages because of breach of contract and negligence respectively. The third cause of action sought to recover the damages allegedly

caused by Harmon from the respondent The Aetna under the surety bond issued to Harmon by The Aetna pursuant to the South Carolina Residential Home Builders Act. *See* S. C. Code § 40-59-70 (1976).

The Aetna moved for summary judgment in its favor and the lower court granted the motion. The lower court held that the Watsons could not recover against The Aetna because they were not named obligees on the bond and neither the bond nor the applicable statutes and regulations created in them a right to sue on the bond. The unstated but necessary implication of this decision is that the Commission, as the named obligee on the bond, is the only party which has a right of action and can recover on the bond. The conclusion to which this leads, that the Commission and not the public is protected by the surety bond, is one with which we cannot agree.

The surety bond was issued to Harmon to satisfy the requirements of Section 40-59-70(b) of the South Carolina Code of Laws. This section directs residential home builders to be licensed by the Commission. One of the requirements for a license is that a residential home builder submit to the Commission "[a]n executed bond with a surety approved by the Commission in the sum of ten thousand dollars, or proof of financial responsibility acceptable to the Commission." S. C. Code of Laws § 40-59-70(b) (1976). The Commission promulgated rules and regulations pursuant to the Act. *See* S. C. Code of Laws, Regulations, Rules 106-1 *et seq.* (1976). Rule 106-4 requires a license application to "be supported by a financial statement, dated within sixty (60) days of date of application, showing a net worth of $50,000 or more or an executed bond with surety approved by the Commission in the sum of $10,000. . . ." The Commission may revoke a license on grounds of "gross negligence, incompetence or misconduct in the performance of homebuilding." S. C. Code of Laws § 40-59-90 (1976); *see also id.* Regulations, Rule 106-7.

The law in this case is clear. If a bond is given pursuant to a statutory requirement, the bond is construed with reference to the statute and the intent of the statute will govern. *Rogers v. U. S. Fidelity and Guaranty Co.*, 225 S. C. 298, 81 S. E. (2d) 896 (1954). Furthermore,

[w]hile a bond is ordinarily purely a contract which, when privately given without any qualifying laws, is to be

strictly construed and not extended beyond the scope of the obligation according to its express terms, a statutory bond to the public given for the observance of a law is to be read, construed, and enforced in connection with, and according to, the statute pursuant to which it is given, and to be interpreted according to the purpose and meaning of the legislative enactment. The provisions of the statute pursuant to which a bond is given are to be read into the bond and considered a part of it. . . . *It is essential that the principal to a statutory bond be a party thereto, while the person in whose behalf a statutory undertaking is executed need not become a party to the instrument.*

12 Am. Jur. 2d *Bonds* § 2,479 (1964) [emphasis added]. *See also id.* § 26, 495-96; *Kimbrell v. Heffner,* 163 S. C. 35, 161 S. E. 175, 177 (1931). "When a bond is given in compliance with the provisions of a statute, the Court will hold liberally the wording and terms of the bond to carry out the statutory purpose." *Pickens County v. Love,* 171 S. C. 235, 250, 171 S. E. 799 (1933). If "doubt exists as to their meaning, their language is to be liberally construed in favor of the parties whom they are designed to protect." *Standard Accident Ins. Co. v. Simpson,* 64 F. 2d 583, 590 (4th Cir. 1933), *cert. denied, sub nom., Carolina Contracting Co. v. Standard Accident Ins. Co.,* 290 U. S. 688, 54 S. Ct. 123, 78 L. Ed. 593 (1933).

Undeniably, a purpose of the statute and regulations governing the licensing of residential home builders is "to protect the home buying public from . . . financially irresponsible builders." *Henderson v. Evans,* 268 S. C. 127, 136, 232 S. E. (2d) 331 (1977)(Gregory, J., dissenting). Such a purpose is made manifest by the requirement in Section 40-59-70(b) that an applicant for a home builder's license submit either proof of financial responsibility or a bond in the amount of ten thousand dollars.

The Commission views a surety bond as the equivalent of a financial statement showing a net worth of $50,000 because Rule 106-4 presents these as alternatives. If a builder met the licensing requirements by providing a financial statement, a person suing a builder would attempt to recover from the builder's net worth; if the builder provided a bond, the person suing the builders should be able to recover on the bond. The decision below vitiates the second alternative.

The case of *Hutto v. American Fire and Casualty Ins. Co.*, 215 S. C. 90, 54 S. E. (2d) 523 (1949), is similar in many respects to the case at bar. A Columbia city ordinance required that a taxicab operator obtain a city license and that, to obtain the license, the taxicab operator file with the city a copy of an indemnity bond or a liability insurance policy. The bond or policy was required to have a term of not less than one year and a provision that the policy could not be cancelled until five days after written notice to the City Clerk. The operator filed an American Fire and Casualty Insurance policy which stated that it was effective "until discontinued." 215 S. C. at 95, 54 S. E. (2d) 523. When the American policy expired, the taxi operator obtained a policy from Keystone Mutual Casualty Company but neither filed the Keystone policy nor gave notice of cancellation of the American policy; however, the operator listed Keystone as the insurer in a letter to the city and on his annual city license application. An accident then occurred between another vehicle and a taxicab in which the plaintiff was a passenger. The cab involved in the accident had not been listed as a covered vehicle under the American policy. Keystone went bankrupt soon after the accident and before commencement of the action. The issues before the court were whether the American policy had been effectively cancelled before the accident and whether the American policy insured the unlisted vehicle.

The court held that the American policy had not been effectively cancelled and that the American policy covered the taxicab involved in the accident. The court ruled that "the purpose of the ordinance and the character of coverage involved" had to be considered in deciding whether the cancellation was effective. *Id.* at 97, 54 S. E. (2d) 523. "The manifest purpose of this ordinance [was] the protection of passengers and members of the public who may be injured or their property damaged through the negligent operation of taxicabs by financially irresponsible owners. [Citations omitted.] The provisions of the ordinance must be read into the policy." *Id.* at 97-98, 54 S. E. (2d) 523. The right to operate a taxicab was conditioned on subsistence of a bond or liability insurance. Because the American policy was the only one filed with the city and since neither the letter nor the application giving notice of the Keystone policy definitely and clearly showed an

intent to cancel the American policy, the American policy was deemed effective.

The court rejected American's contention that its policy, even if in force, did not cover the vehicle involved in the accident because of the character of the insurance involved. The court construed the policy in light of the ordinance in compliance with which it was filed and concluded that the vehicle was covered.

In *Hutto*, the purpose of the statute was to protect the public against financially irresponsible businesses; and this purpose was read into the insurance policy. The court looked to the character of the policy and the purpose of the statute in deciding the issues. This court should do no less.

The trial judge cited *Rogers v. U. S. Fidelity and Guaranty Co.*, 225 S. C. 298, 81 S. E. (2d) 896 (1954), as authority for the proposition that individual members of the public are not "ordinarily" intended to be beneficiaries of a statutory bond unless "expressed in the pertinent legislation." 225 S. C. at 302, 81 S. E. (2d) 896. In *Rogers*, the plaintiff purchased an automobile from an automobile dealer who was bonded pursuant to statute. The automobile, however, was owned by a third person who left the car with the dealer simply to have it serviced. The owner of the car obtained a verdict against the plaintiff and the plaintiff sought to recover the amount of the verdict against him from the insurance company which wrote the dealer's bond. The insurance company demurred to the complaint on the ground that the bond was not to benefit third parties but was for the sole benefit of the State Highway Department. The Supreme Court upheld the demurrer.

The court applied the rule that the bond must be construed with reference to the statute and that the intent of the statute governs. The statute required that a dealer obtain a license and keep records of transactions. "[T]he willful failure to keep the records . . . [was] deemed a breach of the condition of the bond and the full amount or any part thereof may be recovered by suit, or otherwise, in the discretion of the Highway Department." *Id.* at 301, 81 S. E. (2d) 896. The Highway Department was authorized to revoke the dealer's license because of fraud, deceit, or fraudulent breach of warranty.

The Supreme Court based its decisions on three grounds. The first was that the statute contained "no evidence of

intention to provide security, by means of the bond, for any wrong to a member of the public" defrauded by a dealer and that "the amount of the bond [was] indicative of contrary legislative intent." *Id.* at 302, 81 S. E. (2d) 896. In this case, the statute and rules of the Commission, which require a home builder to submit a bond in lieu of proof of financial responsibility, clearly manifest an intention to protect the public from the financially irresponsible builder.

A second ground in *Rogers* was the court's conclusion that a statute ordinarily stated its intention to protect the public as shown by a comparison with other statutes requiring bonds. S. C. Code of Laws § 8-3-220 (public officers), § 23-5-20 (highway patrolmen), and § 40-39-50 (pawn-brokers) (1976). These statutes are distinguishable from the statute governing residential home builders because the bonds required of public officers and of highway patrolmen are both conditioned on faithful performance of duties and are not licensing bonds; licensing required of pawnbrokers is based only on good character and there are no standards of competence. Furthermore, the language of these statutes simply is different and requires separate analysis.

The court's third ground was its interpretation of "[t]he condition of the bond, specified by the statute [there], which required the 'lawful operation' of the dealer's business." 225 S. C. at 302, 81 S. E. (2d) 896. The court viewed the condition as simply referring "to the requirements of the statute, the keeping of records, etc." *Id.* Here the statute does not specify the condition of the bond; rather it simply requires a bond to be submitted in lieu of proof of financial responsibility.

Rule 106-4 of the Commission likewise does not condition a home builder's bond although Rule 106-2 expressly specifies that the bond which the Commission's director must file "shall be conditioned for the faithful accounting of all monies and other property as shall come into his hands."

The South Carolina Residential Home Builders act requires a surety bond or a financial statement because either of these insures that a builder will be financially responsible to those who engage his services. The Watsons relied on Harmon's representation that he was licensed and bonded and they thought themselves protected by the bond. Despite the trial judge's holding that the sole purpose of the surety bond was to

enable Harmon to comply with the licensing requirement of the Commission, the principal purpose of the bond, as we see it, was to assure people like the Watsons that Harmon was financially responsible. The bond serves no purpose at all if it is not to pay individuals who cannot recover from the builder because he has no assets.

But The Aetna and Harmon argue that a useful purpose is served by the bond because a bond insures payment to the Commission of any fines or penalties that might be levied against the principal as a result of a violation of a regulation. Apparently, their position is that the bond or financial statement requirement is not intended to protect a homeowner against a builder's negligence or misconduct but is intended to assure the builder's financial responsibility to the Commission for fines or other penalties.

The only financial sanction which could be levied upon a *licensed* home builder under the law regulating home builders is a fine of one hundred dollars; and it can only be imposed as an alternative to a sentence of thirty days imprisonment where a home builder is convicted of presenting to or filing with the commission false information when obtaining a license. S. C. Code of Laws § 40-59-130 (1976). We cannot accept that the purpose of a financial statement showing a net worth of fifty thousand dollars or a bond of ten thousand dollars is to insure payment of a one hundred dollar fine imposed by a court alternatively to a jail sentence upon a licensed home builder convicted of a narrowly defined misdemeanor. The purpose of the financial statement or bond is to afford some measure of protection to the public and not to safeguard the Commission's interest or to insure the satisfaction of a sentence, especially when the option of jail is available.

Because a particular occupational group is licensed and a bond is required as part of a legislative scheme to protect members of the public, the only proper conclusion is that, absent clear language to the contrary, those protected, here the Watsons, may maintain an action based upon the bond. This view does not in any way violate the Supreme Court's holding in *Rogers* because the bond there was clearly not intended to protect members of the public individually. Moreover, this conclusion is supported by

*Graybar Electric Co. v. St. Paul Mercury Indemnity Co.*, 208 Minn. 478, 294 N.W. 654 (1940) and *Anchor Casualty Co. v. Commissioner of Securities*, 259 Minn. 277, 107 N.W. 2d 234 (1961).

In *Graybar*, plaintiff's assignor contracted with a licensed electrician for the construction of an electrical system. The installation was allegedly done improperly. Suit was brought on the electrician's statutory bond against the surety. Neither the bond nor the statute gave a right of action except to the state. The state only was named in the bond as obligee. In allowing the action to be brought, the Supreme Court of Minnesota observed:

> The public is the actual beneficiary of the legislation. It is dependent entirely upon the state to formulate and assert standards for electricians. . . . Defective work results in injury to the individual. The state's interest . . . is in the well-being of its citizens and in their freedom from injury by those licensed under state laws. The substantive loss still remains personal and for redress there is no governmental responsibility except to provide the legal processes. When the legislature licenses a particular occupational group under bond as part of a general statutory enactment to protect the public in its relations with this group, ordinarily, absent clear language to the contrary, the most reasonable inference is that a right of action exists on the bonds for those to be protected.

294 N.W. at 655.

*Anchor* involved a declaratory judgment action by a corporate surety to determine the scope of a bond issued under a Minnesota act that licensed real estate brokers. A specific default condition apparently was not imposed. Citing *Graybar*, the Minnesota Supreme Court again held that when an occupational group is licensed and a bond required as part of the legislative scheme to protect the public, the bond may be enforced by one claiming injury by misconduct of the licensee.

The Aetna and Harmon, however, cite *E. A. Boswell v. Insurance Co. of North America*, 85 Nev. 359, 455 P. 2d 174 (1969), and assert that it is almost factually identical to the instant case. The case is dissimilar. In *Boswell*, there

was no alternative net worth requirement as there is here.

Finally, there is the bond itself. The bond is conditioned as follows:

> Now therefore ... if the principal shall in all respects comply with the rules and regulations pertaining to Construction Standards and Health and Safety requirements promulgated by the South Carolina Residential Home Builders Commission, then this obligation shall be void. ...

The Aetna, thus, is obligated under the bond for any failure by its principal to comply with the Commission's rules and regulations pertaining to construction standards.

One such rule and regulation adopted by the Commission in apparent reference to Section 40-59-90 of the Code requires, as a condition of licensure, that a home builder not be guilty of either gross negligence, incompetence, or misconduct in the building of homes. *See* S. C. Code of Laws, Regulations, Rule 106-7 (1976).

The Watsons' complaint plainly alleges that the home builder here, Harmon, was guilty of the kind of conduct which the Commission proscribes in its rule and regulation and for which The Aetna, under its bond, could be liable.

Although neither the bond nor a statute expressly confers upon a member of the public a right to maintain an action against the surety on the bond of a home builder, the right of action nonetheless exists by clear implication. When the legislative intent is discerned from the whole of the law [*cf. Milwaukee Enforcers Inc. v. Ball*, 71 Wis. 2d 298, 237 N.W. 2d 715 (1976)] and the language of the bond is considered together with the Commission's rule and regulation regarding the revocation of home builder licenses, no other reasonable conclusion can be drawn. The Watsons have the right, therefore, to institute an action to recover on Harmon's bond.

Reversed and remanded.

SHAW and CURETON, JJ., concur.