2221

The LITE HOUSE, INC., Appellant v. The NORTH RIVER INSURANCE COMPANY, Respondent and Third Party Plaintiff v. Wayne GRIMSLEY and W.W. Grimsley & Company, Inc., Third Party Defendants. CONNECTICUT INDEMNITY COMPANY, Respondent and Third Party Plaintiff v. Randy E. ODOM, Third Party Defendant, of whom The North River Insurance Company and Connecticut Indemnity Company, are Respondents.

(450 S.E. (2d) 63)

Court of Appeals

*R. Bryan Barnes*, of *Sherrill & Rogers*, Columbia, *for appellant.*

*Frank S. Potts*, of *Lide, Montgomery & Potts*, Columbia, *for respondents.*

Submitted, June 7, 1994.

Decided, Sept. 6, 1994; Reh. Den. Nov. 2, 1994.

CONNOR, Judge:

The Lite House, Inc. sought to recover against two surety companies, The North River Insurance Company and Connecticut Indemnity Company, for misconduct by their principals. The principals represented at closing in false affidavits that all suppliers, including The Lite House, had been paid. In fact, they had not. The trial court determined the license bonds issued by the sureties did not cover the alleged misconduct, and sustained the sureties' motion under Rule 12(b)(6), SCRCP. We affirm.

The facts are not in dispute. Contractors failed to pay The Lite House for materials used on separate construction projects. When the false affidavits were signed, R & M Professional Builders, Inc. owed The Lite House $13,260.32 and W.W. Grimsley, Inc. owed The Lite House $3,949.16. The Lite House seeks to recover these debts from the contractors' sureties.

The surety, Connecticut Indemnity, issued a license bond for R & M, which provided in part:

> Now, therefore, the condition of this bond is such that if the above bounded (sic) principal shall in all respects com-

ply with the rules and regulations pertaining to Construction Standards and Health and Safety requirements promulgated by the South Carolina Residential Builders Commission, then this obligation shall be void; otherwise is is to remain in full force and effect.

North River's license bond for W.W. Grimsley, Inc., similarly provided in part:

Now, therefore, the condition of this bond is such that if the above bonded principal shall in all respects comply with the rules and regulations pertaining to Constructions (sic) Standards and [H]ealth and Safety requirements promulgated by the South Carolina Residential Builders Commission, then this obligation shall be void; otherwise it is to remain in full force and effect until the first day of June, 1991 to be effective 7-27-90.

The Lite House contends the principals' signing false affidavits indicating all suppliers had been paid constituted misconduct in the practice of home building. Therefore, The Lite House argues the sureties should be held liable under the bonds for damages The Lite House suffered as a result of that misconduct.

The trial court determined the bonds do not cover situations in which a contractor fails to pay material suppliers. The court reasoned:

The term "misconduct", insofar as it applies to the bonds required by the Commission has been limited to the grounds set forth in the form of the bond which was approved by the Commission pursuant to the S.C. Code Ann. § 40-59-80 (Supp. 1992). The Commission, pursuant to its statutory authority, has determined the form and the limitation of the licensing bonds just as the Commission has been delegated the authority to waive the requirement of a bond altogether upon proof of financial responsibility acceptable to it. As a result, to reform the bonds to expand their terms to include other types of misconduct would usurp the authority delegated to the Commission by the Legislature.

The trial court therefore granted the sureties' 12(b)(6) motion.

## I.

On appeal, The Lite House maintains the trial court should have liberally construed the South Carolina Residential Home Builders Act to include "misconduct" such as signing a false affidavit stating suppliers have been paid. The Lite House argues liability under license bonds[1] should not be limited to violations of health and safety requirements or construction standards, and that suppliers are among the parties the bonds are designed to protect.

The Supreme Court considered a surety's liability under license bonds in *Kennedy v. Henderson,* 289 S.C. 393, 346 S.E. (2d) 526 (1986). In that case, the Kennedys sought to recover on the license bond when the builder they hired to construct a nursery took their $11,000 advance and never commenced construction. The Supreme Court held the trial court erred in not granting the surety's demurrer because the alleged wrongful acts of the builder did not fall within the protection extended by the surety bond. *Id.* at 397, 346 S.E. (2d) at 528.

---

[1] The license bonds in this case were issued pursuant to the following section of the Residential Home Builders Act:

Any residential builder who desires to be licensed under the provisions of this chapter shall make and file with the commissions thirty days prior to the next meeting of the commission a written application on such form as may be prescribed by the commission. The application must be accompanied by the payment of the annual license fee required by the commission and an examination fee as set by the commission. A prerequisite for the taking of an examination for a residential builder's license is a minimum of one year of actual experience under the supervision of a licensed residential builder who is engaged in residential building construction involving the trades or crafts for which the license is desired. The commission, in examining an applicant, shall consider the following qualifications of the applicant:

(a) experience;
(b) ability;
(c) character;
(d) financial condition;
(e) equipment;
(f) ability and willingness to conserve the public health and safety; and
(g) other pertinent information the commission may require.

If, as a result of the examination, the commission finds that the applicant is qualified to engage in residential building in South Carolina, and *if the applicant submits an executed bond in the form and with a surety approved by the commission,* or proof of financial responsibility acceptable to the commission, the commission shall issue the license for which the applicant is qualified. . . . S.C. Code Ann. § 40-59-80 (Supp. 1993). (Emphasis supplied.)

The Court in *Kennedy*, construing a bond with language virtually the same as those involved in the present case, held:

> The surety bond in question is very specific and clear. It is conditioned on the builder's compliance with certain rules and regulations pertaining to construction standards and health and safety requirements. It is not a performance bond guaranteeing the completion of the work contracted. No violations of any construction standards or health and safety regulations are alleged or inferred in the complaint.

*Id.* at 396, 346 S.E. (2d) at 528.

*Kennedy* clearly controls the facts of this case. The alleged violation here do not involve construction standards and health and safety standards.

## II.

Alternatively, The Lite House argues the license bonds should be reformed because they do not adequately carry out the statutory purpose of protecting the public. We held in *Watson v. Harmon*, 280 S.C. 214, 312 S.E. (2d) 8 (Ct. App. 1984), homeowners could recover against the surety under the license bond when their homes were damaged by a builder exposing them to heavy rains while rebuilding the roof. In light of *Kennedy*, that case may not be construed to extend liability under license bonds beyond compensation to homeowners for health or safety regulation violations by builders.

Affirmed.

LITTLEJOHN, Acting Judge, concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent. I would find the contractors' signing of false affidavits stating that all suppliers had been paid constituted "misconduct" within the meaning of S.C. Code Ann. § 40-59-90 (1992) and violated the condition contained in the bonds in question.

The bonds state only one condition: "[That the] principal shall in all respects comply with the rules and regulations per-

taining to Construction Standards and Health and Safety requirements promulgated by the South Carolina residential Builders Commission." Among the rules and regulations promulgated by the commission is 27 S.C. Code Ann. Regs. 106-7 (1992). This regulation directs the commission to revoke the license of a builder guilty of "gross negligence, incompetence, or misconduct in the performance of home building."

I can think of no greater "misconduct in the performance of home building" than a contractor's submitting a false affidavit stating that all suppliers had been paid.

*Kennedy v. Henderson,* 289 S.C. 393, 346 S.E. (2d) 526 (1986), does not control. There construction had not begun. Here, it was completed.

I would reverse. *Watson v. Harmon,* 280 S.C. 214, 312 S.E. (2d) 8 (Ct. App. 1984).