24426

The LITE HOUSE, INC., Petitioner v. The NORTH RIVER INSURANCE CO., Respondent and Third Party Plaintiff v. Wayne GRIMSLEY and W.W. Grimsley and Co., Inc., Third Party Defendants.

(471 S.E. (2d) 166)

Supreme Court

*R. Bryan Barnes,* of *Rogers, Townsend & Thomas, P.C.,* Columbia; and *John C. Bradley, Jr.,* of *McCutchen, Blanton, Rhodes & Johnson,* Columbia, *for petitioner.*

*Frank S. Potts,* of *Lide, Montgomery, Potts & Medlock P.C.,* Columbia, *for respondent.*

Heard Apr. 3, 1996.

Decided May 20, 1996.

## ON WRIT OF CERTIORARI
## TO THE COURT OF APPEALS

BURNETT, Justice:

We granted certiorari to review the Court of Appeals decision in *The Lite House, Inc., v. North River Ins. Co.,* — S.C. —, 450 S.E. (2d) 63 (Ct. App. 1994). We affirm as modified.

### FACTS

W.W. Grimsley & Company, Inc., a business owned and operated by Wayne Grimsley,[1] constructed residential buildings for sale to others. As part of the licensing requirements for residential builders, respondent provided a surety bond on behalf of Grimsley to the South Carolina Residential Builders

---

[1] Hereinafter, W.W. Grimsley & Company, Inc. and Wayne Grimsley are collectively referred to as "Grimsley."

Commission (the Commission).[2] The bond provided in part as follows:

> The condition of this bond is such that if [Grimsley] shall in all respects comply with the rules and regulations pertaining to Construction Standards and Health and Safety requirements promulgated by [the Commission], then this obligation shall be void; otherwise it is to remain in full force and effect. . . .

In 1991, Grimsley obtained materials from petitioner to be used in a residential construction project. However, Grimsley failed to pay for the materials and, at the closing of the residences involved, falsely signed affidavits stating that all material suppliers, including petitioner, had been paid in full. Thereafter, Grimsley became insolvent. Petitioner then brought this action against respondent to recover the money owed by Grimsley.[3] Petitioner alleged in its complaint that Grimsley's act of failing to pay for the materials, and Grimsley's act of signing false affidavits, fell within the purview of the protection extended by the surety bond and therefore petitioner was entitled to recover. The circuit court disagreed and rendered judgment against petitioner. The Court of Appeals affirmed.

## ISSUES
Did the Court of Appeals err in holding that the wrongful acts of Grimsley were not covered under the terms of the surety bond?

## DISCUSSION
The Court of Appeals held that Grimsley's failure to pay for the materials and Grimsley's act of signing the false affidavits were not covered under the terms of the surety bond because these acts did not involve construction standards or health and safety requirements. Petitioner argues this was error in two respects. First, petitioner con-

---

[2] *See* S.C. Code Ann. §§ 40-59-70 and 40-59-80 (Supp. 1995), and 27 S.C. Code Ann. Reg 106-1 (Supp. 1995).

[3] Petitioner also brought an action against another surety company, Connecticut Indemnity. The actions were consolidated at trial and on appeal before the Court of Appeals. After this Court granted certiorari, Connecticut Indemnity settled with petitioner.

tends the Court of Appeals erred in focusing on whether Grimsley's acts violated an actual construction standard or health and safety requirement rather than focusing on whether the acts violated a "rule or regulation which pertains to construction standards and health and safety requirements." Petitioner maintains that since the Commission promulgated a regulation which states a builder's license may be revoked for "misconduct in the performance of home building,"[4] and this regulation "pertains to construction standards,"[5] the condition of the surety bond was triggered whether or not Grimsley's acts of "misconduct" were themselves a violation of a construction standard or health and safety requirement. We disagree.

In *Kennedy v. Henderson*, 289 S.C. 393, 346 S.E. (2d) 526 (1986), a case involving a surety bond similar to the bond at issue here, this Court held that the trial judge erred in failing to sustain a demurrer to the plaintiff's complaint where no violations of any construction standards or health and safety requirements were alleged or inferred in the complaint, even though the complaint clearly alleged "misconduct" on the part of the builder.

In *Kennedy*, the plaintiffs hired a builder to construct a dwelling-house type building to be used as a nursery. The plaintiffs advanced the builder $11,000 for the project. When the builder failed to commence construction on the building and failed to return the plaintiffs' money, they brought an action against the builder. The plaintiffs also sought to recover from the builder's surety under the terms of a bond containing the identical condition as the bond issued by respondent in this case.

---

[4] *See* 27 S.C. Code Ann. Reg. 106-7 (Supp. 1995). In 1991, this regulation provided in part as follows:

If after [a] hearing, a majority of the Commission votes in favor of revoking the license of the residential home builder . . . on the basis of fraud or deceit in obtaining his license or gross negligence, incompetence, or misconduct in the performance of home building, the Commission shall order the license of such residential home builder revoked.

[5] Regulation 106-7 "pertains to construction standards" in the sense that it cites various building codes the Commission is to use as guides in determining if a builder violated proper structural, mechanical, and workmanship standards. *See Watson v. Harmon*, 280 S.C. 214, 312 S.E. (2d) 8 (Ct. App. 1984) (stating that Regulation 106-7 is a rule or regulation which pertains to construction standards).

As in the case at hand, the question presented to the Court in *Kennedy* was whether the alleged wrongful acts of the builder fell within the purview of the protection extended by the surety bond. In holding that the alleged wrongful acts were not covered under the terms of the bond, we stated.

> The surety bond in question is very clear. It is conditioned on the builder's compliance with certain rules and regulations pertaining to construction standards and health and safety requirements. It is not a performance bond guaranteeing completion of the work contracted. No violations of any construction standards or health and safety regulations are alleged or inferred in the complaint. In fact, the complaint on its face shows that a violation of any of these standards would be virtually impossible because construction of the nursery was never begun.

*Id.* at 396-397, 346 S.E (2d) at 528.

Under *Kennedy*, therefore, in order to state a cause of action under the terms of a surety bond such as the one at issue here, a violation of some construction standard or health and safety requirement must be alleged or inferred in the complaint. This is so because the bond, a written, is neither a performance bond guaranteeing completion of the work contracted nor a payment bond guaranteeing that all material suppliers will be paid.[6]

Next, petitioner argues that even if an actual violation of a construction standard or health and safety requirement was required to trigger liability under the terms of the surety bond, the complaint sufficiently alleged a violation of a construction standard.[7] We disagree.

Although not specifically defining the term "construction standard," this Court essentially held in *Kennedy* that a construction standard is something related to the actual construction of a building, residence, etc. Here, the

---

[6] To the extent the Court of Appeals' opinion in *Brailsford v. Lawyers Sur. Corp.*, 302 S.C. 515, 397 S.E. (2d) 254 (Ct. App. 1990), is inconsistent with this opinion, it is overruled.

[7] Petitioner contends the "construction standard" Grimsley violated was S.C. Code Ann. § 29-7-20 (Supp. 1995), which, among other things, makes it a misdemeanor to intentionally certify to an owner or lending institution that all material suppliers have been paid in full when in fact they have not.

wrongful acts alleged in petitioner's complaint, i.e. Grimsley's failure to pay petitioner for the materials and Grimsley's signing of false affidavits indicating petitioner had been paid, had nothing to do with the actual construction of the residences involved. Consequently, no violation of any construction standard is alleged or inferred in petitioner's complaint.

In short, whereas Grimsley's acts of failing to pay for the materials and signing the false affidavits may constitute "misconduct,"[8] and may be grounds to revoke, suspend, or restrict Grimsley's license pursuant to S.C. Code Ann. § 40-59-90 (Supp. 1995) and 27 S.C. Code Ann. Reg 106-7 (Supp. 1995), or may be grounds for criminal prosecution under S.C. Code Ann. § 29-7-20 (Supp. 1995), the acts do not fall within the purview of the protection extended by the surety bond at issue.[9] Consequently, the Court of Appeals correctly held that petitioner could not recover under Grimsley's license bond. However, to the extent the Court of Appeals' opinion may be read as holding that petitioner could not recover under the terms of the bond because petitioner was not a "homeowner," the opinion is hereby modified. As long as the alleged misconduct of a home builder falls within the coverage of the builder's license bond, nothing precludes members of the public other than homeowners from maintaining an action against the surety under the terms of the bond.[10]

---

[8] *See* S.C. Code Ann. § 40-59-85(C) (Supp. 1995) defining the term "misconduct" as including a pattern of repeated failure by a residential builder to pay his labor or material bills.

[9] Except for stating the amount of the surety bond, the statutes imposing the license bond requirement essentially leave it up to the Commission to determine the scope of protection provided by the bond. *See* S.C. Code Ann. §§ 40-59-70 and 40-59-80 (Supp. 1995).

[10] In *Watson v. Harmon,* 280 S.C. 214, 312 S.E. (2d) 8 (Ct. App. 1984), the Court of Appeals held that the main purpose of the statutes imposing the license bond requirement is to protect "the public" from the financially irresponsible builder, and that "a member of the public" has a right to maintain an action against the surety on the license bond of a home builder. In *Kennedy,* this Court stated, "[w]e concur [with the Court of Appeals' holding in Watson] that the purpose of a surety bond is for the protection of the public; however, the bond protects the public only as to those violations falling within the coverage of the particular surety bond provisions." 289 S.C. at 396, 346 S.E. (2d) at 528. Although both the *Watson* and *Kennedy* cases involved homeowners, neither case precluded members of the public other than homeowners from maintaining an action against a surety on the license bond of a home builder, as long as the alleged misconduct of the home builder falls within the coverage of the particular surety bond provisions.

Affirmed as modified.[11]

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.

---

[11] We need not address petitioner's remaining argument as it is manifestly without merit. *See* Rule 220(b), SCACR.